UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

ARTUR USTYAN,

    Petitioner,

v.

JOHN ASHCROFT, Attorney General,

    Respondent.

No. 02-9596

---

ORDER
May 17, 2004

---

Before **SEYMOUR,** Circuit Judge, **BRORBY**, Senior Circuit Judge, and **HENRY**, Circuit Judge.

---

Respondent's motion to publish the order and judgment dated April 8, 2004, is granted. A copy of the published opinion is attached.

                                Entered for the Court
                                Patrick Fisher, Clerk of Court

                                By:
                                    Amy Frazier
                                    Deputy Clerk

F I L E D
United States Court of Appeals
Tenth Circuit

APR 8 2004

PATRICK FISHER
Clerk

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ARTUR USTYAN,

        Petitioner,

v.

JOHN ASHCROFT, Attorney General,

        Respondent.

No. 02-9596

**ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION APPEALS
(No. A 75-337-147)**

Submitted on the briefs:

Beverly W. Oserow, Denver, Colorado, for Petitioner.

Michael P. Lindemann, Assistant Director, and Linda S. Wernery, Senior
Litigation Counsel, Office of Immigration Litigation, Civil Division,
United States Department of Justice, Washington, D.C., for Respondent.

Before **SEYMOUR** , Circuit Judge, **BRORBY** , Senior Circuit Judge, and
**HENRY** , Circuit Judge.

**BRORBY** , Circuit Judge.

Petitioner Artur Ustyan, an ethnic Armenian and Georgian citizen from the separatist region of Abkhazia, seeks review of the denial of his applications for asylum and withholding of deportation. The Immigration Judge (IJ) found that Mr. Ustyan failed to demonstrate past persecution or a well-founded fear of future persecution, primarily because he did not show that his alleged persecutors had acted on the basis of his ethnic or political identity. The Board of Immigration Appeals (BIA) summarily affirmed, leaving the IJ's decision as the final agency determination for review. *See Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003). We conclude that the IJ's decision is free of any constitutional or legal error, and is supported by substantial evidence. Accordingly, we deny the petition for review and affirm. [*]

During armed conflict between Georgian forces and Abkhazian separatists in the early 1990s, Mr. Ustyan resisted recruitment by either side because he had friends on both. He suffered no reprisals by the Georgians, but the Abkhazians responded by accusing him of fighting and/or hiding weapons for the Georgians and, when he denied the accusation, beating him and putting him in a cell exposed to chlorine gas. Upon his release, he was bedridden for more than a month.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

A year later, he received and again ignored a recruitment notice from the Abkhazian commander. Shortly after that, at the very end of the open hostilities, Abkhazian soldiers came to his home and accused him of hiding weapons for the Georgian forces, who had pulled out of the region. Finding nothing, the soldiers knocked him unconscious and burned his home. He then left for Russia.

Mr. Ustyan spent two years in Russia. Lacking official papers, he was unable to secure legal status or obtain a steady job. He also evidently lived in fear of persecution by Cossacks. In May 1996, he entered the United States and subsequently overstayed his visa. In these immigration proceedings, he conceded removability and applied for asylum and withholding of deportation.

The IJ denied the applications because Mr. Ustyan had not established that any mistreatment he suffered, or feared he would suffer in future, at the hands of the Abkhazians constituted persecution on account of ethnic identity or political opinion. [1] The IJ was

> persuaded by the fact that respondent's confrontations all took part
> not because of his Armenian heritage or his religion or his social
> group, but because of the civil war. The fact that both sides in the
> civil war wanted him to join, shows just that: that he was caught in
> the middle, not because of his ethnic group, but simply because they

---

[1] The IJ also held that Mr. Ustyan could, in any event, relocate to other parts of Georgia uninvolved in the Abkhazian conflict. This alternative rationale has generated a great deal of contention that is difficult to address properly in light of the conclusory nature of the IJ's analysis and the many factual details potentially relevant to the issue. We need not pursue the matter further here.

were looking for support and for soldiers. A very long line of cases concerning Central American asylum seekers hold that one who wishes to remain neutral cannot claim this as political opinion for his asylum claim.

Admin. R. at 197-98. This passage correctly articulates a central tenet of *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), and its progeny. *See, e.g.*, *Bartesaghi-Lay v. INS*, 9 F.3d 819, 822 (10 th Cir. 1993). As for the evidence relevant thereto, we cannot say that the IJ's assessment was "contrary to what a reasonable factfinder would have been compelled to conclude," and, hence, we may not disturb the IJ's decision. *Vatulev v. Ashcroft*, 354 F.3d 1207, 1211 (10 th Cir. 2003). Mr. Ustyan insists the IJ should have found that the Abkhazians targeted him because of his ethnic heritage (or, what amounts to the same thing, a political allegiance to the Georgians imputed to him on account of that heritage), but such a finding is not compelled by our record. It was not unreasonable for the IJ to conclude, rather, that the Abkhazians simply sought him out as a young male recruit, pressured him when he resisted, and then interrogated him for suspected assistance to the Georgians on account of his refusal to join their ranks.

Mr. Ustyan relies heavily on a recent decision by the Ninth Circuit, *Melkonian v. Ashcroft*, 320 F.3d 1061 (9 th Cir. 2003), which recognized the validity of an asylum claim by an Armenian who was persecuted by Abkhazian separatists in the same area of Georgia. But each case must be decided on its own record and the suggested comparison with the facts presented in *Melkonian* only

-4-

points up the deficiencies in the record offered to support Mr. Ustyan's claims. In *Melkonian* , the applicant established that his "family felt bound to side with the Georgians . . . [and] demonstrated its loyalty by supplying the Georgian fighters with fruit and with money for weapons;" that his father-in-law "spoke out against the Muslim [i.e., Abkhazian] tactics and in favor of [Georgian] Christianity;" and that the Abkhazians "specifically targeted *Armenian* men to conscript and send to the front line where casualties ordinarily are the highest." *Id.* at 1066, 1068. This evidence was specifically cited by the Ninth Circuit to distinguish the general rule of *Elias-Zacarias* , noted above, that coercive recruitment tactics and an applicant's resistance thereto do not reflect the kind of social/political animus necessary to support an asylum claim. *Id.* at 1068. Mr. Ustyan has not cited to any comparable evidence in the record developed for this case.

In addition to asserting–without record support, as we have seen–that the Abkhazians imputed to him a pro-Georgian political opinion *based on his ethnic heritage* , Mr. Ustyan suggests alternatively that suspicions about his assistance to the Georgians *based on his resistance to Abkhazian recruitment efforts* reflect the imputation of such an opinion. While it may generally be true, as some circuits have held, "that imputed political opinion is still a valid basis for relief after *Elias-Zacarias* ," *Canas-Segovia v. INS* , 970 F.2d 599, 601 (9 th Cir. 1992); *see, e.g., Najjar v. Ashcroft* , 257 F.3d 1262, 1289 (11 th Cir. 2001); *Morales v.*

*INS*, 208 F.3d 323, 331 (1 st Cir. 2000), this particular argument for imputed opinion would eviscerate the central tenet of *Elias-Zacarias* . That is, when a refusal to fight for a group–which, per *Elias-Zacarias* , is not in itself enough to attribute a political character to attendant coercive or punitive acts by that group–is the only predicate for an alleged imputation of a political stance (loyalty to an opposing group), acceptance of an imputed-opinion claim would effectively elevate the refusal to fight into an actionable basis for asylum. Mr. Ustyan has not cited any case law directly undermining *Elias-Zacarias* in this way, nor has he persuaded us through argument that such a step is appropriate.

We therefore agree with the IJ that Mr. Ustyan's claim for asylum fails because he has not tied his allegations of persecution to an actionable ethnic or political basis. *See* 8 U.S.C. § 1253(h) (asylum may be granted from persecution on account of applicant's "race, religion, nationality, membership in a particular social group, or political opinion"). Having failed to establish that he is entitled to discretionary consideration for asylum, Mr. Ustyan has perforce failed to establish that he is entitled to mandatory withholding of removal, "which, we have acknowledged, requires a petitioner to meet a higher standard than that for asylum." *Batalova v. Ashcroft* , 355 F.3d 1246, 1255 (10 th Cir. 2004).

Finally, Mr. Ustyan objects to the streamlined review process used by the BIA in this case. His constitutional objections are foreclosed by recent decisions.

*See Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10 th Cir. 2004) (discussing *Yuk v. Ashcroft*, 355 F.3d 1222, 1232 (10 th Cir. 2004), and *Batalova*, 355 F.3d at 1253). His administrative objection–that this case was inappropriate for streamlined review in light of significant errors in the IJ's analysis–is undercut by our conclusion that the IJ's determination was in fact correct.

The petition for review is DENIED. The inappropriate and redundant Motion for Remand to the Board of Immigration Appeals is likewise DENIED.