**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 26 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

SERGIO ALBERTO RANGEL
QUINONEZ and ESTHER CRISTINA
CAMACHO MIMENDY,

       Petitioners,

    v.

JOHN ASHCROFT,

       Respondent.

No. 03-9541
(Petition for Review)
(Nos. A77-868-231/232)

---

**ORDER AND JUDGMENT** [*]

---

Before **TACHA,** Chief Judge, **BRISCOE** , and **HARTZ** , Circuit Judges.

---

Petitioners Sergio Alberto Rangel Quinonez and Esther Cristina Camacho

Mimendy, appeal the March 6, 2003, decision by the Board of Immigration

Appeals (BIA), affirming the order of an immigration judge (IJ) ordering their

removal from the United States. We exercise jurisdiction under 8 U.S.C.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

§ 1252(a), see *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003), and affirm.

## I. BACKGROUND

Petitioners are natives and citizens of Colombia who were admitted to the United States as nonimmigrants on June 20, 1999. They were authorized to remain in the country until September 19, 1999, but remained without authorization beyond that date. At a hearing before the IJ on April 25, 2000, Petitioners conceded removability, but applied for asylum and restriction on removal under §§ 208 & 241(b)(3) of the Immigration and Nationality Act (INA), and withholding of removal under the Convention against Torture. Ms. Camacho Mimendy is married to Mr. Rangel Quinonez, and her claims are derivative of his.

The IJ rejected Petitioners' applications for asylum, restriction on removal, and withholding of removal, and ordered their removal from the United States. The BIA affirmed without opinion. On appeal Petitioners challenge the denial of their claims for asylum and restriction on removal They do not contest the rejection of their claim under the Convention against Torture.

### A. Applicable Law

Asylum and restriction on removal are the two available means of relief under the INA to an alien who fears persecution if returned from the United States to a particular country. *Wiransane v. Ashcroft*, No. 02-9555, 2004

-2-

U.S. App. LEXIS 8259 at *2 (10th Cir., Apr. 27, 2004). "A grant of asylum permits the alien to remain in this country; a restriction on removal forbids removal of the alien to the country where persecution may occur." *Id.*

In order to be eligible for asylum, an alien must first establish his status as a refugee. 8 U.S.C. § 1158(b)(1). To do so, he must show that he "is unable or unwilling to return to, and is unable or unwilling to avail himself . . . of the protection of, [his country of origin] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Aliens who, like Petitioners, base their asylum claims upon a well-founded fear of future persecution "must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear [of] . . . persecution." *Wiransane*, 2004 U.S. App. LEXIS 8259 at *5 (internal quotation marks omitted).

In order to obtain a restriction on removal, Mr. Rangel Quinonez must show that his "life or freedom would be threatened in [Colombia] because of [his] race, religion, nationality, membership in a particular social group, or political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A). "The Attorney General may not remove an alien if the alien is able to establish a clear probability of persecution in the country to which he would be returned." *Wiransane*, 2004 U.S.

-3-

App. LEXIS 8259 at *6 (internal quotation marks omitted). "The standard of proof for restriction on removal is more demanding than the well-founded fear standard applicable to an asylum claim. Thus, when an applicant fails to establish the objective component of a well-founded fear of persecution, he necessarily fails to establish entitlement to restriction on removal." *Id.* at *6–*7 (internal quotation marks and citations omitted).

## B. Facts and Proceedings Below

Mr. Rangel Quinonez contends that he suffered political persecution giving rise to a fear of future persecution in the course of events surrounding an attempted abduction by unidentified anti-government guerillas on March 9, 1999. At the time, he was a personnel manager at his father's car dealership in Bucaramanga, Colombia. He attributes the abduction attempt to his earlier refusal to comply with a demand by a man who visited him at the dealership and "identified himself as a member of a guerilla group." R. at 110. The demand was "to let one of their . . . people come in to work in the enterprise." *Id.* Mr. Rangel Quinonez testified that for about a week after the failed abduction he hid at his father's home in the hills above Bucaramanga, and then went with his wife and daughter to Miami, Florida. He returned to Colombia a week and a half later, thinking that he could live in the country if he had a security service.

Threatening follow-up phone calls, however, convinced him otherwise, and he returned to the United States on June 20, 1999.

Although Mr. Rangel Quinonez testified that the first visitor identified himself as a guerilla, he provided no evidence that the men involved in the abduction attempt were guerillas—other than the assertion that in Colombia "the common criminals [are] always asking to steal money or a car or something," whereas guerillas typically attempt abductions. *Id.* at 114. Further, the only link Mr. Rangel Quinonez made between these two incidents and his political opinions was the assertion that guerillas in Colombia "try to place people in a business to convince the workers to come over to . . . the guerillas' beliefs[,]" *id.* at 111–12, and that when he refused the initial demand to hire an operative, he "told [the guerillas] that [his] political views were not in accordance with their political views." *Id.* at 111. The IJ noted, however, that Mr. Rangel Quinonez "testified that he has never belonged to a political party or donated any money to a political organization," and that "it does not appear that his father has been politically active either." *Id.* at 68.

The IJ denied Petitioners' asylum claim because he found that Mr. Rangel Quinonez showed neither a subjective nor an objective fear of persecution in Colombia on the basis of his political opinion. With respect to Mr. Rangel Quinonez's subjective fear, the IJ based his finding on Mr. Rangel-Quinonez's

return to Colombia only 10 days after his first entry into the United States, as well as his testified-to knowledge that his parents and brothers were living safely in Colombia.

As for the objective element of the asylum claim, the IJ found that Mr. Rangel Quinonez had not "establish[ed] the nexus between the harm which he suffered and which he fears and any of the protected grounds." *Id.* at 73–74. First, the IJ found that Mr. Rangel Quinonez's description of the visit by the guerilla operative did not "show[] that [he] has been targeted for persecution" because "[w]e do not know from [his] version of events who wanted him to hire somebody or why they wanted [him] hired." *Id.* at 74. The IJ also found that Mr. Rangel Quinonez had failed to show that the attempted abduction was made on account of his political beliefs, because he "did not have any expressed political opinion" beyond his testimony in the hearing that he believed in "liberty," which amounted to a "political opinion . . . so vague that . . . [he] did not have a meaningful political opinion which anyone would be interested in changing." *Id.* at 74–75. Finally, the IJ found that Mr. Rangel Quinonez's testimony as to the threatening phone calls after the attempted abduction was "less than persuasive," because, again, he did not identify the callers or provide any details about the calls. *Id.* at 74.

With respect to Petitioners' restriction-on-removal claim, the IJ said that "[b]ecause [Mr. Rangel Quinonez] has failed to establish that he meets the definition of refugee, he has failed to satisfy the higher burden of proof for withholding of removal . . . ." *Id*. at 76.

Petitioners challenge the IJ's adverse asylum determination, contending that he erred in finding no "nexus between the harm which [Mr. Rangel Quinonez] suffered and which he fears and any of the protected grounds," Aplt. Br. at 5, because the IJ erroneously found that (1) Mr. Rangel Quinonez did not possess a meaningful political opinion sufficient to attract political persecution; (2) his kidnappers did not have a political motive in attempting to kidnap him; (3) Mr. Rangel Quinonez failed to establish the identity of his would-be kidnappers as guerillas; and (4) "security precautions are sufficient in Bucaramanga, Colombia" to live free of harm . . . ." *Id*. They also assert that the IJ erred in denying their restriction-on-removal claim.

## II. DISCUSSION

"Where . . . the BIA summarily affirms or adopts an immigration judge's decision, this court reviews the judge's analysis as if it were the BIA's." *Tsevegmid*, 336 F.3d at 1235. Our standard of review is highly deferential: "We review the IJ's resolution of the initial refugee status question under a substantial evidence standard." *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004). This

means that the IJ's adverse asylum decision "must be upheld if supported by reasonable, substantial and probative evidence on the record as a whole." *Krastev v. INS*, 292 F.3d 1268, 1275 (10th Cir. 2002). We hold that the record supports the IJ's holding that Mr. Rangel Quinonez failed to make the requisite showings to be eligible for asylum or restriction on removal under the INA.

Guerilla targeting of an innocent civilian for non-political reasons does not in itself amount to political persecution for the purposes of an asylum claim. *See INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992) (fact that "the guerillas seek to fill their ranks in order to carry on their war against the government and pursue their political goals . . . does not render . . . forced recruitment 'persecution on account of . . . political opinion.'" (internal citation omitted)); *Ustyan v. Ashcroft*, No. 02-9596, U.S. App. LEXIS 6814, at *4 (10th Cir., April 8, 2004). Even assuming that the men who visited, attempted to kidnap, and later called Mr. Rangel Quinonez were guerillas, their use of force to place an operative in his employ (or to kidnap him for ransom) does not amount to political persecution if that attempt was made without regard to his political opinions. Although Mr. Rangel Quinonez told the first alleged guerilla that he did not share the guerillas' views, this expression of opinion (probably held by most of his compatriots) was not necessarily the reason for his persecution. *Cf. Elias-Zacarias*, 502 U.S. at 483 ("[Petitioner] appears to argue that not taking sides

-8-

with any political faction is itself the affirmative expression of a political opinion. That seems to us not ordinarily so . . . .").  After all, Mr. Rangel Quinonez had not distinguished himself from the general populace by participating in any political activity.  It was not unreasonable for the IJ to find that the guerillas' interest in him was not his rather vague political views but something else, such as his wealth or his position in the car dealership.  Hence, we affirm the IJ's adverse asylum determination on the ground that Petitioners failed to show that any persecution of Mr. Rangel Quinonez was based on his political opinions.  It is therefore irrelevant whether the IJ erred in finding that Mr. Rangel Quinonez had failed to establish that his assailants were in fact anti-government guerillas. Likewise, whether Mr. Rangel Quinonez could live safely in Colombia is irrelevant.

Because we affirm the IJ's holding that Mr. Rangel Quinonez failed to establish the objective component of a well-founded fear of persecution for the purpose of his asylum claim, he necessarily failed to establish his (and his wife's) entitlement to restriction on removal.  *See Batalova v. Ashcroft*, 355 F.3d 1246, 1255 (10th Cir. 2004); *Yuk*, 355 F.3d at 1236.  Accordingly, we affirm the IJ's restriction-on-removal determination.

## III.  CONCLUSION

We AFFIRM the decision of the BIA.

ENTERED FOR THE COURT


Harris L Hartz
Circuit Judge