**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 9 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

HAKIM ABDI MOOGE,

Petitioner,

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent.

No. 02-9590
(BIA No. A76-853-904)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

Petitioner seeks review of a Board of Immigration Appeals (BIA) order

affirming a decision of the immigration judge (IJ) denying his application

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

for asylum, withholding of deportation, and relief under the Convention Against Torture. We have jurisdiction under 8 U.S.C. § 1252(a).

Petitioner claims to be a citizen and native of Somalia. Admin. R. at 168. He entered the United States through Canada with a Kenyan passport on or about March 21, 1998. *Id.* at 205-06. He did not have his own passport, and the name on the passport was not his. *Id.* at 206. He timely filed his application for asylum and withholding of deportation shortly after his arrival and was subsequently charged by the Immigration and Naturalization Service (INS) [1] with entering the United States without a valid immigrant visa or entry document, passport, or other travel document, in violation of 8 U.S.C. § 1227(a)(1)(A). *Id.*. at 285. He conceded removability, but requested asylum, withholding of deportation, relief under the Convention Against Torture, and voluntary departure. [2] *Id.* at 143. He also declined to designate a country of deportation. *Id.* at 220.

---

[1] "The INS ceased to exist on March 1, 2003, and its functions were transferred to the U.S. Citizenship and Immigration Services ('USCIS') within the newly formed Department of Homeland Security [DHS]." *Batalova v. Ashcroft*, 355 F.3d 1246, 1248 n.1 (10th Cir. 2004). We refer to the INS rather than DHS.

[2] On appeal, he does not address the IJ's denial of withholding of deportation, denial of relief under the Convention Against Torture, or the denial of voluntary departure. We therefore deem these issues waived. *See Tran v. Trs. of the State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).

Following a hearing, the IJ found petitioner removable as charged and denied his applications for relief, ordering him deported to Somalia, or, alternatively, to Kenya. *Id.* at 131-38. The BIA summarily affirmed that decision without opinion. *Id.* at 2. Because petitioner has failed to carry the heavy burden placed on applicants challenging adverse asylum determinations, we deny his petition for review.

## Standard of Review

This case hangs almost exclusively on the credibility of petitioner's testimony, much of which the IJ did not believe. When the BIA summarily affirms the IJ, we review the judge's decision as if it were the BIA's. *See Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1235 (10th Cir. 2003). We do not weigh the evidence, nor do we evaluate the credibility of witnesses. *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004) (citing *Woldemeskel v. INS*, 257 F.3d 1185, 1189 (10th Cir. 2001)). In addition, the BIA's factual findings "are conclusive unless the record demonstrates that any reasonable adjudicator would be compelled to conclude to the contrary." *Tsevegmid*, 336 F.3d at 1235 (quotation omitted). The IJ must give "specific, cogent reasons" for a determination that petitioner lacks credibility. *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004).

Background

Petitioner testified he was born on February 2, 1975, in Mogadishu, Somalia. [3] Admin. R. at 168. He stated he was a member of the Midgan clan, a small, minority tribe. *Id.* at 172. Prior to the civil war in Somalia, petitioner's father was a civil engineer employed by the government; his mother was a homemaker. *Id.* at 171. According to petitioner, after the departure of the last president, dictator Mohamad Siad Barre, in 1991, and the ensuing civil war, the family fled Mogadishu frequently but always returned. *Id.* at 211-12. Petitioner stated that in May of 1992 his parents were killed while he was out getting food from the market. *Id.* at 173. He learned of the killings from a family friend. *Id.* Petitioner stated that his younger brother witnessed the killings while hiding under a bed. *Id.* at 173. Because of the widespread fighting and killings, he fled the city with his younger brother and sister. *Id.* at 175. [4]

While on the road, their car was stopped by members of the United Somalia Congress, which is made up of the majority Hawiye clan. *Id.* at 175, 178.

---

[3]    He first recited this date as February 12, 1974. Admin. R. at 168. In addition, the copy of his Somali identification card lists his birth date as January 12, 1974. *Id.* at 208. When questioned by the IJ, petitioner reaffirmed that he was born on February 12, 1974. *Id.*

[4]    He also testified, inconsistently, he was about sixteen (instead of eighteen) when this happened. Admin. R. at 175. He later repeated the error in how old he was when his parents were killed. *Id.* at 216.

Petitioner testified that the men were taken to a detention center where they were subjected to forced labor, beatings, and other mistreatment. *Id.* at 176-77. He further claimed that a number of people were killed each day for no reason and that he was beaten many times. *Id.* at 177. He spent twenty days at the camp, until he was rescued by a friend of his mother's who was able to buy his release. *Id.* at 176-78. They continued their flight to Kismayo, Somalia, and later to Kenya, *id.* at 180, where they stayed at a refugee camp near Nairobi. *Id.* at 180-81.

Petitioner remained at the refugee camp approximately six years, even marrying there. He was registered at the refugee camp, but his registration card was also a meal ticket, and he gave it away when he left. *Id.* at 196-97. His stated reason for leaving the camp was that the Kenyans were forcing some refugees to return to Somalia. *Id.* at 197-99. He left his brother and sister with the family friend who had helped them, *id.* at 198. He also left his wife of less than a year. *Id.* at 199. He asserted he obtained the money necessary to fly to the United States [5] from this same family friend. *Id.* at 200. After spending two days in New York, he received an airplane ticket to Seattle, Washington. *Id.* at 203-04.

---

[5] Petitioner flew to Toronto, Canada, and crossed into the United States by car. Canadian immigration authorities accepted his passport, which he testified carried his picture but not his real name. Admin. R. at 206.

Immigration Decision

The IJ first found that the basis for petitioner's asylum claim was his ethnicity and the past persecution he and his family had suffered. *Id.* at 132. The IJ noted the difficulties with relying on certain documentary evidence, *e.g.*, petitioner had a "photo-substituted" Kenyan passport, which was sufficiently reliable to be accepted for admission by immigration authorities in both Canada and the United States. Indeed, the IJ found that the passport itself cast doubt on petitioner's claimed Somali citizenship, indicating that petitioner "may be, in fact, Kenyan." *Id.* at 133. The IJ also noted that petitioner's Somalia identification card could not be admitted into evidence because it was not accompanied by a certified translation, the photograph on the I.D. card did not appear to be that of petitioner, proper comparison was hampered because the original card was not provided (only a copy), [6] and the birth date on the card did not match petitioner's stated birth date. *Id.*

Thus the IJ determined he was "forced to rely almost exclusively on [petitioner's] testimony in determining whether or not he has met his burden of proof [as to asylum eligibility]." *Id.* at 134. The IJ further found specific

---

[6]     At the hearing there was some discussion, although not a fully satisfactory explanation, of why petitioner had not brought the original I.D. card with him to the hearing. Admin. R. at 161-65. The IJ also expressed some doubt that petitioner was the same person the I.D. card's photograph depicted. *Id.* at 163-64.

inconsistencies in petitioner's testimony, *e.g.*, petitioner's inability to recite his ancestry consistently [7] and his incorrect recitation of his age when his parents were killed. *Id.* at 135, 216. The IJ found it improbable that petitioner's family could have survived the clan warfare in Mogadishu for sixteen months after Siad Barre's departure and noted that only when questioned about this by the IJ did petitioner explain the many flights from Mogadishu during this time period. *Id.* at 135-36; 211-12. The court was also unpersuaded that petitioner had been living in a refugee camp outside Nairobi when the address given on the asylum application appeared to be a city street address. *Id.* at 136-37.

Based on the "implausibilities and inconsistencies" in petitioner's testimony, the IJ found "that testimony to be noncredible." *Id.* at 137. With "no other compelling pieces of evidence," the IJ found petitioner had failed to meet his burden of proof. *Id.*

Discussion

On appeal, petitioner raises the following issues:

1. Whether the IJ "erred in ruling as a matter of law" in determining petitioner did not supply credible evidence to establish refugee status.

---

[7]     Being able to recite one's ancestors is important to the establishment of tribal memberships. Admin. R. at 217-19. When asked to recite his ancestors, petitioner gave varying answers on five occasions. *Id.* at 170, 216-17.

2. Whether the BIA erred in applying the streamlining provisions of C.F.R. § 3.1(a)(7) (now codified at 8 C.F.R. § 1003.1(a)(7)) to this case and, if so, whether the error was prejudiced or a violation of due process under the Fifth Amendment.

3. Whether the streamlining procedures of 8 C.F.R. § 3.1(a)(7) as a whole violate due process.

A.  Streamlining Procedures

Because the second and third issues are both related and governed by this court's recent decisions, we consider them together and first.  The regulations have been recodified, *e.g.*, 8 C.F.R. § 3.1(a)(7) is now 8 C.F.R. § 1003.1(a)(7).  We refer to the current version.

Petitioner argues that the BIA erred in applying the streamlining provisions of 8 C.F.R. § 1003.1(a)(7) to this case. [8]  We have upheld these provisions against various challenges, both administrative and constitutional.  *See Yuk*, 355 F.3d at 1228-32 (upholding summary affirmance regulations as comporting with due process and administrative law principles); *Batalova*, 355 F.3d at 1251-54 (upholding review by single BIA member); *Sviridov*, 358 F.3d at 726-27 (upholding BIA's procedures against claim that BIA failed to comply with applicable regulations and denied petitioner due process).

---

[8]  The case was actually decided in accordance with 8 C.F.R. § 1003.1(e)(4). *See* Admin. R. at 2.  However, as a practical matter, the provisions of (a)(7) and (e)(4) are in every material respect identical.  *See Batalova*, 355 F.3d at 1254 n.10.

Moreover, because we assume BIA members perform their jobs thoroughly, absent any indication to the contrary, we assume the BIA member to whom the appeal was assigned reviewed the record before deciding to adopt the IJ's decision. *See Batalova* , 355 F.3d at 1252. Finally, petitioner's "administrative objection–that this case was inappropriate for streamlined review in light of significant errors in the IJ's analysis–is undercut by our conclusion that the IJ's determination was in fact correct." *Ustyan v. Ashcroft* , ___ F.3d ___, No. 02-9596, 2004 WL 1091754, at *3 (10th Cir. Apr. 8, 2004). Hence, petitioner's challenge to the BIA's procedures must fail.

B.     Eligibility for Asylum

In order to obtain asylum, petitioner was required to prove first he is a refugee within the statutory definition of 8 U.S.C. § 1101(a)(42)(A). *Batalova* , 355 F.3d at 1254. [9]  Then he must persuade the Attorney General, in his discretion, to grant relief under 8 U.S.C. § 1158(b). *Id.* Here, as in *Batalova* , the IJ determined petitioner failed to establish refugee status, and we therefore review only that initial question. *Id.* In reviewing that decision, we must determine whether the record substantially supports the determination that petitioner failed

---

[9]     The statute defines a refugee as a person outside any country of his nationality who is "unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).

to establish refugee status, *id.*, or, instead, "is so decisively to the contrary that a reasonable factfinder would have concluded petitioner is a refugee." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003).

In line with our highly deferential standard of review, we do not question the IJ's credibility determinations "as long as they are substantially reasonable." *Woldemeskel*, 257 F.3d at 1192. Indeed, credibility is a factual finding, not to be disturbed if "substantially reasonable and supported by specific, cogent reasons." *Sviridov*, 358 F.3d at 729 *; see also* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary."). Upon careful review, we are not compelled. *See Ustyan*, 2004 WL 1091754, at *2 (where IJ's assessment not contrary to what reasonable factfinder would be compelled to conclude, we may not disturb IJ's decision).

The IJ in this case supported his determination with the required specific and cogent reasons. Petitioner's claim that he improperly recited his ancestors at the hearing because he was nervous and that the true purpose of the recitation exercise by the Hawiye forces was to detect dialect (and thus clan membership) simply asks us to weigh or reweigh the evidence, which we cannot do. *See Woldemeskel*, 257 F.3d at 1192. The same holds for petitioner's argument that the IJ failed to address critical evidence, specifically a letter from a family friend

submitted in corroboration of petitioner's claim of persecution and Somalian identity. *See* Aplt. Br. at 22-23; Admin. R. at 272-73. To the contrary, the IJ found that "[t]here [were] no other compelling pieces of evidence which would allow the [c]ourt to find that [petitioner] has met his burden of proof *without credible testimony in support of his application*." Admin. R. at 137 (emphasis added). Moreover, "the [IJ] is not required to discuss every piece of evidence when [he] renders a decision." *Hadjimehdigholi v. INS*, 49 F.3d 642, 648, n.2 (10th Cir. 1995). There is nothing to support petitioner's claim that the IJ did not consider this evidence.

Conclusion

We have carefully examined the record and conclude that the IJ's credibility determinations are substantially reasonable. *See Woldemeskel*, 257 F.3d at 1192. In addition, the IJ's decision is "supported by reasonable, substantial, and probative evidence on the record considered as a whole" and will be upheld for that reason. *Id.* at 1189 (quotation omitted). For these reasons, we DENY the petition for review and AFFIRM the BIA's decision.

Entered for the Court


David M. Ebel
Circuit Judge

-11-