**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 21 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

FERNANDO JARAMILLO;
CLAUDIA PALACIO; PAULA
JARAMILLO,

        Petitioners,

v.

JOHN ASHCROFT, Attorney General
of the United States,

        Respondent.

No. 03-9586
(Nos. A95-227-607, A95-227-613,
& A95-227-659)
(Petition for Review)

---

**ORDER AND JUDGMENT** *

---

Before **HARTZ** , and **BALDOCK** , Circuit Judges, and **BRIMMER** ,** District
Judge.

---

      After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

---

\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

\*\*     The Honorable Clarence A. Brimmer, District Judge, United States District
Court for the District of Wyoming, sitting by designation.

this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

Petitioners seek review of a decision by the Board of Immigration Appeals (BIA) summarily dismissing their appeal and affirming the decision of the immigration judge (IJ) that denied petitioners' requests for asylum and restriction on removal. [1]  Our jurisdiction to review the denial of a request for asylum arises under 8 U.S.C. § 1252(a)(2)(B)(ii).  *Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1234 (10th Cir. 2003).  Title 8 U.S.C. § 1252(a) grants us jurisdiction to "review final orders of removal, such as a denial of withholding of removal."  *Id.* at 1235.  When the BIA summarily affirms an IJ's decision, we review the determination of the IJ in disposing of the appeal.  *Id.*

> We review the IJ's factual findings for substantial evidence in the record.  The BIA's findings of fact are conclusive unless the record demonstrates that "any reasonable adjudicator would be compelled to conclude to the contrary."  8 U.S.C. § 1252(b)(4)(B).  We will not reverse the agency's decision unless the evidence compels the conclusion that petitioners have a well-founded fear of persecution because of one of the protected grounds.

---

[1]  "Restriction on removal was known as 'withholding of removal' prior to the Illegal Immigration Reform and Immigrant Responsibility Act of 1996. *See Wiransane v. Ashcroft,* 366 F.3d 889, 892 n. 1 (10th Cir.2004).  We use the newer terminology 'restriction on removal' throughout this opinion." *Elzour v. Ashcroft*, 378 F.3d 1143, 1148 n.5 (10th Cir. 2004).

*Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1046 (10th Cir. 2004) (citations omitted). We review legal questions de novo. *Elzour v. Ashcroft*, 378 F.3d 1143, 1150 (10th Cir. 2004).

Petitioners, a married couple and their young daughter, are natives and citizens of Columbia. Petitioner Fernando Jaramillo had worked for several years for the Columbian affiliate of Philip Morris, the American conglomerate. Petitioners entered this country on April 17, 2001, on visitors' visas and failed to depart after their authorized visiting period ended.

In early January 2002, Mr. Jaramillo filed an application for asylum. The other two petitioners based their applications for asylum on their relationship to Mr. Jaramillo. After the Immigration and Naturalization Service (INS)[2] denied petitioner's request for asylum, all three petitioners appeared before an IJ, renewing their requests for asylum. The IJ considered the applications for asylum to also be applications for restriction on removal, under 8 U.S.C. § 1231(b)(3), and to also be applications for relief under the United Nations Convention Against Torture.

---

[2] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice. Its enforcement functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (2002). Because the majority of events at issue here predate that reorganization, we continue to refer to the INS in this opinion.

In support of his application, Mr. Jaramillo asserted that he and his family were targeted by the Revolutionary Armed Forces of Columbia (FARC) because of his association with an American company. In an affidavit, petitioner testified that he received two letters from FARC threatening him because of his political opinions and because of his high position in Philip Morris and ordering him to leave the country. Mr. Jaramillo and his wife, Claudia Palacio, both testified that members of her family had been killed or kidnaped by FARC. Other evidence described the political climate in Columbia and the state of human rights practices there. Finally, petitioner presented the testimony of a psychiatrist who had examined him and found him to be suffering from post-traumatic stress disorder and depression.

Petitioners' primary evidence was copies of the two threatening letters, described above, that were allegedly received by Mr. Jaramillo from FARC demanding the family's departure from Columbia. Because the letters were not originals and had not been authenticated, the IJ rejected them as proof that Mr. Jaramillo had actually received them and that they had been sent by FARC. He also concluded that the testimony about harm to Ms. Palacio's family was not significant support for the application because it was not mentioned in the original asylum application, leading the IJ to doubt its authenticity.

While acknowledging that the background material provided by petitioner establishes the "very adverse security situation" in Columbia, AR at 39, the IJ, citing *In re Sanchez & Escobar*, 19 I. & N. Dec. 286 (BIA 1985), concluded that such situation represented the kind of general and widespread violence held to be inadequate support for an asylum application. The IJ further concluded from the background materials that, had petitioner attempted to enlist help from the Columbian government, it would have been receptive to attempting to protect him.

In summary, the IJ found that petitioners had failed to show that they would be targeted for persecution if they returned to Columbia. The requests for asylum, restriction on removal, and relief under the Convention Against Torture were denied, and petitioners were ordered removed to Columbia.

On appeal, petitioners argue that they were denied due process at the hearing, that the IJ used the wrong standard in assessing asylum claims based on "membership in a particular social group" and on account of imputed "political opinion,"[3] that the IJ erroneously concluded that the persecution suffered by them

---

[3]    Sections 1158(b)(1) and 1101(a)(42)(A) of Title 8 vest the Attorney General with the authority to grant asylum if the Attorney General determines that the alien is a refugee. A refugee is defined, *inter alia*, as an alien who is unable or unwilling to return to his or her country of nationality because of "persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C.

was not different and separate from that endured by the general population, and that he erroneously discredited their reasons for failing to ask for help from the Columbian government.

At the outset, we note that it was petitioners' burden to establish that they were refugees and thus eligible for asylum. 8 C.F.R. § 208.13. We also note that an applicant's testimony, "if credible, may be sufficient to sustain the burden of proof without corroboration." *Id.*

## Due Process

Petitioners complain that they were denied due process when the IJ discounted the credibility of the two threatening letters purportedly sent by FARC. As mentioned above, the IJ rejected this evidence because the letters petitioner produced in court were not originals. Further, there was no authentication to support the letters as having come from FARC. Mr. Jaramillo testified that the letters had been authenticated by someone who worked for another company, but that that person was unable to produce written certification because such an act would have conflicted with his current employment. Because of these evidentiary shortcomings, the IJ concluded that "there is nothing about

[3](...continued)
§ 1101(a)(42)(A).

the letters which the Court can recognize as being authentic, and I simply cannot find that the respondent on this record has established that he actually received such communication from the FARC." AR at 42.

Petitioners point out that there was no objection to the letters by opposing counsel, that the judge had unconditionally admitted the letters into evidence, and that, during the hearing, petitioners had offered to bring the originals to court via courier. Under these circumstances, they argue, they were denied due process when the IJ rejected their evidence. We disagree.

Despite petitioners' offer to produce the original letters, there was no offer by petitioners to provide authentication of those letters. It was not the court's responsibility to pursue authentication in a situation where petitioners bore the burden of proving their eligibility for asylum. We find that the reasons advanced by the IJ for discounting this evidence are specific and cogent. *See Elzour,* 378 F.3d at 1150. As for petitioners' argument that the testimony of Mr. Jaramillo alone is sufficient to establish the persecution claim, we note that Mr. Jaramillo, while he could testify to receipt of the letters and their effect on him, was not qualified to testify as to their authenticity. On this record, we are unable to hold that any reasonable adjudicator would be compelled to reach a contrary conclusion. *See Tsevegmid* , 336 F.3d at 1235.

Petitioners argue that they should have been given more time during the hearing to develop their evidence about the murders and kidnapping of members of Ms. Palacio's family.  Although the IJ urged the participants to stay within a two-hour time frame and assured them that he would not penalize petitioners for being less than completely detailed, he noted in his decision that "[t]he testimony about these episodes were [sic] fairly generalized."  AR at 37.  Petitioners cite this as another example of the denial of due process.

A full reading of the IJ's decision, however, reveals that the generalized nature of this testimony was not the main reason cited by the IJ for refusing to give this evidence significant weight.  The IJ primarily discounted the evidence of the harm suffered by Ms. Palacio's family because it had not been included in Mr. Jaramillo's asylum application.  That fact led the IJ to conclude that "[t]he application would seem to call for that type of information, and the fact that the information does not appear on the asylum application causes the Court to have some question as to the authenticity of those reports."  *Id.*  Again, this is a specific and cogent reason for discounting the evidence.  *See Elzour*, 378 F.3d at 1150.  In conclusion, we find that neither the treatment of the alleged FARC letters nor the time allotted for the hearing denied petitioners due process.

<u>Standard for "imputed political opinion" and "membership in a particular social group"</u>

Petitioners argue that the IJ used the wrong standard in assessing their asylum claims based on Mr. Jaramillo's "membership in a particular social group" and on account of imputed "political opinion." Petitioners state that this circuit had not defined the contours of what constitutes "membership in a particular social group" and has not considered whether an application for asylum may establish persecution based on "imputed political opinion." Since the date of petitioners' brief, however, we have published *Estrada-Escobar,* 376 F.3d 1042, which sheds light on both of these issues.

In *Estrada-Escobar*, the primary petitioner was a former high-ranking Peruvian police official who had supervised the security for judges presiding over prosecutions of suspected terrorists. Petitioner and his family received phone calls purported to be from the terrorist group, Shining Path, threatening all of them with death. The IJ, relying on *In re Fuentes*, 19 I. & N. Dec. 658, 1988 WL 235456 (BIA 1988), denied the asylum petition, *inter alia*, because petitioner claimed persecution on account of his status as a former police officer and not because of his political opinion. In rejecting petitioners' attempts to distinguish *Fuentes*, this court explained that "the key is not the type of threat encountered, but whether the threat was encountered because of one's employment rather than because of one's political opinion." *Estrada-Escobar*, 376 F.3d at 1047.

-9-

Paralleling *Estrada-Escobar*, petitioner here is attempting to establish his well-founded fear of persecution because of his former status as a high-ranking employee of Philip Morris rather than because of any distinct political opinion held by him personally. There is no evidence in the record that petitioner ever spoke out against the aims of FARC or associated himself with any cause that explicitly opposed FARC's objectives. As in *Estrada-Escobar*, if an applicant's status as a former police officer, without more, is insufficient to establish membership in a particular social group, the same holds true for petitioner's status as a former Philip Morris executive.

*Estrada-Escobar* also affirmed the IJ's implicit rejection of the petitioner's argument that he faced persecution because of imputed political opinion. The court stated, "[t]here is no compelling evidence that suggests the Shining Path persecuted Estrada on account of an imputed political opinion. In fact, he fails to link his persecution to anything other than his status as a police officer." *Id.* at 1047. Similarly, here, there is no evidence in the record, other than the unauthenticated letters, that FARC imputed any political opinion to petitioner.

While petitioner is correct that this court has not explicitly defined the components of an asylum claim based on imputed political opinion, we are confident that the circumstances presented here would not suffice. In *Ustyan v. Ashcroft*, 367 F.3d 1215 (10th Cir. 2004), we considered a claim for asylum by an

-10-

ethnic Armenian and citizen of Georgia who argued that the Abkhazians imputed to him a pro-Georgian political opinion because of his resistance to Abkhazian recruitment efforts . *Id.* at 1217.

In analyzing this claim, this court first noted the principle announced in *INS v. Elias-Zacarias*, 502 U.S. 478 (1992), that the refusal to take sides in a civil war could not be the basis for an asylum claim. We then went on to observe that, "[w]hile it may generally be true, as some circuits have held, 'that imputed political opinion is still a valid basis for relief after *Elias-Zacarias*,'"[4] accepting Mr. Ustyan's argument for asylum based on the type of imputed political opinion he espoused would "elevate the refusal to fight into an actionable basis for asylum." *Ustyan*, 367 F.3d . at 1218 (quotation omitted). Similarly, here, accepting petitioner's argument based on imputed political opinion would elevate employment in a foreign multi-national corporation to an actionable basis for

---

[4]   The petitioner in *Elias-Zacharias* had maintained that he feared persecution on account of political opinion because he resisted being recruited into the military forces of a guerrilla organization. In rejecting this theory, the Court explained that "'persecution on account of . . . political opinion' in [8 U.S.C. § 1101(a)(42)] is persecution on account of the *victim's* political opinion, not the persecutor's. . . . Thus, the mere existence of a generalized 'political' motive underlying the guerrillas' forced recruitment is inadequate to establish (and, indeed, goes far to refute) the proposition that Elias-Zacarias fears persecution *on account of* political opinion, as [§ 1101](a)(42) requires." *Elias-Zacarias*, 502 U.S. at 482.

asylum. As in *Ustyan*, we see no caselaw undermining *Elias-Zacharias*, nor are we persuaded that such a step is appropriate. *See Ustyan*, 367 F.3d at 1218.

Because we agree with the IJ that petitioner has failed to establish a well-founded fear of persecution on account of either membership in a particular social group or because of political opinion, imputed or otherwise, he is unable to establish his status as a refugee, and is therefore ineligible for asylum. Since petitioner has failed "to meet the standard for asylum, [he] also [has] failed to establish the higher and more difficult standard for withholding of deportation, which requires that [he] establish 'a clear probability of persecution on one of the specified grounds.'" *Estrada-Escobar,* 376 F.3d at 1048 (quoting *Krastev v. INS,* 292 F.3d 1268, 1271 (10th Cir. 2002)).

Moreover, because of our holding on the asylum issue, we need not consider petitioner's challenges to the other grounds for the IJ's decision, including his findings concerning petitioners' situation as distinguished from the status of the general Columbian population and his determination about petitioner's failure to ask for help from the Columbian government. *See id.*

The petition for review is DENIED.

Entered for the Court

Bobby R. Baldock
Circuit Judge

-12-