**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MARIA AMANDA
CHARALAMBOS; CAROLINA
CHARALAMBOS,

Petitioners,

v.

ERIC H. HOLDER, JR.,[*]
United States Attorney General,

Respondent.

No. 08-9560
(Petition for Review)

---

**ORDER AND JUDGMENT**[**]

---

Before **BRISCOE**, **BALDOCK**, and **HOLMES**, Circuit Judges.

---

Maria Amanda Charalambos and her daughter, Carolina, petition for review

of a Board of Immigration Appeals ("BIA") decision affirming the denial of their

applications for asylum and restriction on removal. The narrow issue before this

---

[*]      Pursuant to Fed. R. App. P. 43(c)(2), Eric H. Holder, Jr. is substituted for
Michael B. Mukasey as the respondent in this appeal.

[**]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and
collateral estoppel. It may be cited, however, for its persuasive value consistent
with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court is whether Ms. Charalambos's demonstrated fear of returning to her native Colombia stems from a threat of persecution on account of a statutorily protected ground.[1] She claims her return would be met with persecution by the terrorist group Revolutionary Armed Forces of Colombia ("FARC") because of its mistaken belief she once funded the paramilitaries, an opposing terrorist organization. After a hearing, an Immigration Judge rejected her claim concluding she was more likely targeted by the FARC because of her family's wealth rather than her political beliefs. The BIA affirmed, holding that one's support of the paramilitaries would not necessarily be an expression of a political view, and that Ms. Charalambos had failed to show the FARC believed any of her actions were politically motivated. Because the BIA employed the correct legal reasoning and reached a decision supported by substantial evidence, *see Uanreroro v. Gonzales*, 443 F.3d 1197, 1203-04 (10th Cir. 2006) (describing standard of review), we exercise jurisdiction under 8 U.S.C. § 1252(a) to deny the petition.

I.

Ms. Charalambos comes from Fusagasuga, Colombia, where her family owned and operated a building materials supply company. The family lived in relative peace until August 1995, when the FARC kidnaped her fourteen year-old

---

[1] Because Carolina's claim is derivative of her mother's, we need not address it separately.

nephew and held him for two months until her family paid $350,000 in ransom. The FARC began bothering them again in 1998. In June of that year, members of the local organization, FARC 52, began making threatening phone calls to the family business, where Ms. Charalambos worked alongside her brother Guillermo Acosta, whose son had been kidnaped. Ms. Charalambos testified that in the beginning, the callers simply demanded money. But as time went on, the FARC started accusing Guillermo of funding the paramilitaries. The family reported some of these incidents to the police and were at times protected by the GAULA, an elite government anti-kidnaping unit. By September 1998, however, Guillermo had had enough and arranged to meet with members of FARC in hopes of negotiating the family's peace. Guillermo never returned from the meeting, and about two weeks later his body was found. Members of FARC 52 claimed responsibility for his murder in a radio address. They also called Ms. Charalambos and told her they had killed Guillermo because of his support for the paramilitaries.

Ms. Charalambos testified that the threats continued even after Guillermo's death. In one incident, she claimed she and another brother were driven off the road by members of FARC, who then demanded money. They managed to escape unharmed after her brother told the guerillas he would make arrangements to pay them. At times, they were also threatened by the paramilitaries, who likewise demanded money to fund their operations. Ms. Charalambos claims these threats

-3-

continued unabated until September 2000, when she fled to the United States. According to her testimony, she has never been aligned with any political group or given money to any terrorist organization. She still has five siblings living in Colombia, one of whom is currently making payments to the FARC.

## II.

To be eligible for asylum or restriction on removal, an alien must first demonstrate that she is a refugee as defined in the Immigration and Nationality Act ("INA"). She must then persuade the Attorney General to exercise his discretion to grant the requested relief. The INA defines a "refugee" as someone outside his or her native country "who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). To make the required showing, an applicant may establish that she suffered persecution in the past on a protected ground. If she makes a showing of past persecution, then a rebuttable presumption arises that she has a well-founded fear of future persecution if she were to return to her native country. *Yuk v. Ashcroft*, 355 F.3d 1222, 1233 (10th Cir. 2004).

The BIA concluded Ms. Charalambos was not a refugee because she failed to establish a well-founded fear of persecution based on an enumerated ground.

-4-

That is, she failed to show that any mistreatment she suffered (or fears) at the hands of the FARC constituted persecution on account of her political opinion. This holding is mandated by *Ustyan v. Ashcroft*, 367 F.3d 1215 (10th Cir. 2004). The petitioner in that case was an ethnic Armenian and Georgian citizen who had been persecuted by Abkhazian forces for refusing to take sides in a civil war. He argued that after resisting the Abkhazians' recruitment efforts, they imputed a hostile political opinion to him and accused him of collaborating with the other side. Making a similar argument here, Ms. Charalambos insists the FARC imputed a hostile political opinion to her because she refused to fund its operations. But as we held in *Ustyan*, to accept this argument "would eviscerate the central tenet" of *Immigration and Naturalization Service v. Elias-Zacarias*, 502 U.S. 478 (1992). *Ustyan*, 367 F.3d at 1218.

> That is, when a refusal to fight for a group–which, per *Elias-Zacarias*, is not in itself enough to attribute a political character to attendant coercive or punitive acts by that group–is the only predicate for an alleged imputation of a political stance (loyalty to an opposing group), acceptance of an imputed-opinion claim would effectively elevate the refusal to fight into an actionable basis for asylum.

*Id.*

Ms. Charalambos's claim obviously is not based on her refusal to take up arms for the FARC, but the holdings of *Ustyan* and *Elias-Zacarias* nonetheless apply to her situation. The consequences borne out of one's refusal to take sides in a civil war do not alone give rise to a claim of political persecution. *See*

-5-

*Ustyan*, 367 F.3d at 1218. To reverse the BIA, the record must compel the conclusion that Ms. Charalambos has a well-founded fear that the FARC will persecute her because of her actual political beliefs and not simply because she refused to fund their operations. *Elias-Zacarias*, 502 U.S. at 483. The record does not compel this conclusion. In fact, Ms. Charalambos offers nothing to explain why the FARC allegedly believed she supported the paramilitaries other than her resistance to their own extortion attempts. She specifically testified to having no political affiliations whatsoever, *see* Admin. R. at 117, and there is no evidence she was politically outspoken or ever donated to any political cause.

Moreover, even if we accept that the FARC persecuted Ms. Charalambos because it believed she supported the paramilitaries, we cannot assume the FARC imputed a political opinion to her based on such support. *See Elias-Zacarias*, 502 U.S. at 482 (noting that support of a guerilla movement is not synonymous with a political motive). As the BIA noted, "the FARC could have believed that the respondent's family provided financial support to the paramilitary simply out of personal motivation to protect their business interests." Admin. R. at 3. And given Ms. Charalambos's testimony concerning threats she received from the paramilitaries, the FARC could have believed she was motivated to support the opposition purely out of fear. "Of course, the motives of the asylum seeker are relevant only to the extent that they illuminate the motives of the alleged persecutors." *Adhiyappa v. INS*, 58 F.3d 261, 267 (6th Cir. 1995). The point is

there is simply nothing in the record that leads us, let alone compels us, to conclude the FARC targeted Ms. Charalambos because of her political beliefs. We therefore agree with the BIA's rejection of her claim because she has not tied her allegations of persecution to an actionable statutory basis. This failure "necessarily constitutes a failure to meet the more stringent burden of proof for restriction on removal," *Ba v. Mukasey*, 539 F.3d 1265, 1271 (10th Cir. 2008), which requires the alien to show "a clear probability of persecution on one of the specified grounds," *Krastev v. INS*, 292 F.3d 1268, 1271 (10th Cir. 2002).

The petition for review is DENIED.

Entered for the Court


Bobby R. Baldock
Circuit Judge