PUBLISH

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 20 2004**

## UNITED STATES COURT OF APPEALS

**PATRICK FISHER**
**Clerk**

## TENTH CIRCUIT

MARCO ANTONIO
ESTRADA-ESCOBAR; ADA
MARLENE ESTRADA; MARCO
ANTONIO ESTRADA; JOHNNY
CHRISTOPHER ESTRADA;
ADA ROSA ESTRADA,

     Petitioners,

v.

JOHN ASHCROFT,

     Respondent.

AMERICAN IMMIGRATION LAW
FOUNDATION,

     Amicus Curiae.

No. 02-9568

## PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS
### (BIA Nos. A70 582 255, A70 582 256, A70 582 257, A70 582 258, A70 582 259)

Submitted on the briefs:

Shelley Wittevrongel, Boulder, Colorado, for Petitioners.

Peter D. Keisler, Assistant Attorney General, Civil Division, Terri J. Scadron, Assistant Director, Jennifer A. Parker, Trial Attorney, Office of Immigration

Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for Respondent.

Mary A. Kenney, Beth Werlin, and Nadine K. Wettstein, Washington, D.C., American Immigration Law Foundation, as Amicus Curiae.

---

Before **EBEL** , **BALDOCK** , and **LUCERO** , Circuit Judges.

---

**BALDOCK** , Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioners are natives and citizens of Peru. They have overstayed their visitors' visas to this country and acknowledge their status as removable aliens. They assert, however, that they fear for their lives if returned to Peru because a terrorist group known as the Sendero Luminoso ("Shining Path") has marked them for assassination. Petitioners seek review of an order of the Bureau of Immigration Appeals (BIA) summarily affirming the decision of an immigration judge (IJ) denying their applications for asylum and withholding of removal.

FACTS

The principal petitioner, Marco Antonio Estrada-Escobar (Mr. Estrada), entered this country as a visitor on June 9, 1989. The other petitioners, his family members, had previously entered this country on April 6, 1989, also on visitors' visas.

Mr. Estrada became a Peruvian police officer in 1974. He rose through the ranks, eventually obtaining the rank of major in the Peruvian National Police. From 1987 to 1989, he was chief of security for Peruvian judges who sat on terrorist cases. These so-called "faceless judges" sat behind a screen, invisible to the defendants. Mr. Estrada subsequently spent three months as chief of a special police unit in Peru's "emergency zone," an area of the country governed by the military where terrorists are particularly active.

The IJ found that terrorist guerillas are still very active in Peru. The Shining Path, a doctrinaire Maoist group, has engaged in a campaign of politically-motivated attacks on persons and property, including assassinations of police, judges and public officials. He further found, however, that the number of guerillas has declined markedly in recent years because the government has made large-scale arrests and has recently captured the head of the Shining Path organization.

Mrs. Estrada, Mr. Estrada's wife, testified that while Mr. Estrada was in the emergency zone, she received a telephone call purporting to be from the Shining Path, threatening to kill her and her children. As the result of this threat, Mrs. Alzamora-Estrada and the children left the area and went to live with her parents. When she returned briefly to the house to collect her belongings, she received a second call informing her that her children would be killed because of her husband's work.

Mr. Estrada asserts that when he returned from the emergency zone in March 1989, he received a telephone call stating that he and his family would be killed. The caller alluded to the Shining Path. The police force assigned security personnel to accompany Mr. Estrada's wife to work and his son to school.

In 1989, Mr. Estrada's wife came to the United States with their children, while Mr. Estrada remained in Peru. Eventually, at their urging, he joined them in the United States, taking a vacation from the National Police. He subsequently obtained permission to extend his time away from the force for a period of nine months, then for a period of two years, and finally remained in this country. The police eventually granted him retirement from the force, in June 1994.

After a hearing, the IJ provided four reasons why petitioners should be denied asylum and withholding of deportation: (1) it is not considered persecution when a police officer receives threats because of his duties as a police officer

-4-

(citing *Matter of Fuentes*, 19 I. & N. Dec. 658 (BIA 1988)); (2) petitioners failed to show that the government of Peru was unable or unwilling to protect them; (3) petitioners could relocate to another part of the country, since the grievance of the Shining Path was generally a local one where they were living; and (4) other family members have continued on with their lives in Peru without incidents affecting their safety.

Petitioners raise the following issues on review: (1) the IJ improperly relied on *Matter of Fuentes* because that case is distinguished from the facts of their case; (2) the IJ and the BIA failed to consider imputed political opinion and Estrada's status as a former police officer; (3) the IJ improperly classified the threats against Estrada as purely local; (4) the IJ improperly relied on evidence about Estrada's other family members; (5) the IJ failed to make a finding concerning well-founded fear of persecution; (6) the BIA's streamlined decision violates due process and its own regulation governing affirmance without opinion.

## STANDARD OF REVIEW

Since the BIA summarily affirmed the IJ's decision, we review the IJ's analysis as if it were the BIA's. *Wiransane v. Ashcroft*, 366 F.3d 889, 897 (10th Cir. 2004). Petitioners argue, however, supported by the amicus, that the BIA's use of the affirmance-without-opinion procedure violated their constitutional right to due process. We rejected that argument in *Yuk v. Ashcroft*,

-5-

355 F.3d 1222, 1232 (10th Cir. 2004) and therefore must also reject it here.  They also argue that the BIA should not have used the affirmance-without-opinion procedure because the issues on appeal are substantial, not controlled by BIA precedent, and present a novel fact situation.  *See* 8 C.F.R. § 1003.1(e)(4).  We reject those contentions as well, based on our analysis of the merits of petitioners' case.

To be eligible for asylum, an alien must first establish his status as a "refugee."  *Wiransane*, 366 F.3d at 893.  To establish refugee status, the applicant must demonstrate that he has suffered past persecution or has "a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A).  "Persecution" under this section means not only persecution by the government but also by a non-governmental group that the government is "unwilling or unable to control."  *Batalova v. Ashcroft*, 355 F.3d 1246, 1253 (10th Cir. 2004) (quotation omitted).  "Aliens basing their asylum claims upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution."  *Wiransane*, 366 F.3d at 893 (quotation omitted).

We review the IJ's factual findings for substantial evidence in the record. *Nguyen v. INS*, 991 F.2d 621, 625 (10th Cir. 1993). The BIA's findings of fact are conclusive unless the record demonstrates that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We will not reverse the agency's decision unless the evidence compels the conclusion that petitioners have a well-founded fear of persecution because of one of the protected grounds. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992).

ANALYSIS

**1. IJ's reliance on *Matter of Fuentes***

In *Fuentes*, a former member of the national police in El Salvador, who had also served as a guard at the United States Embassy, sought asylum based on allegations of a well-founded fear of persecution by leftist guerillas. "The guerillas . . . knew him by name, knew he was a member of the police, and had threatened him personally while he was a member of the national police." *Matter of Fuentes*, 19 I. & N. Dec. at 659. The alien also presented testimony that the guerillas had killed people for "having been" in the military, and that they knew of his past service and would punish or kill him if he returned to his home village. *Id.* (internal quotation omitted). The BIA found that the guerillas had not "persecuted" the alien during his past service as a policeman on account of his

-7-

political opinion; that the future danger he described was not based on his political beliefs, but on the "danger that one with ties to a participant in a violent struggle might expect if he ventures into an area of open conflict," *id.* at 662; and that the alien had failed to establish that he would be persecuted if he returned to another part of El Salvador, *id.* at 662-63. It stated that "the dangers faced by policemen as a result of that status alone are not ones faced on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* at 661.

Petitioners argue that their case should be distinguished from *Matter of Fuentes*. They make several arguments, three of which essentially overlap. First, they claim, the threats against Estrada and his family are terrorist threats, rather than the types of threats an alien typically may encounter due to combat or employment as a policeman. Second, Peru is not a country at war, as El Salvador was, but a country faced by terrorism. Third, the danger they face is a political danger, not a combat danger. We reject each of these arguments. The rationale in *Fuentes* applies to terrorist activities, including those of the Shining Path, because the key is not the type of threat encountered, but whether the threat was encountered because of one's employment rather than because of one's political opinion. *See Cruz-Navarro v. INS*, 232 F.3d 1024, 1027-29 (9th Cir. 2000). We also reject petitioners' argument that their case is distinguished because

-8-

Estrada was marked for assassination by the Shining Path; we note that the same was true of the policeman in *Matter of Fuentes*. 19 I. & N. Dec. at 659. Finally, the fact that threats were made to Estrada's family members, in addition to himself, does not undermine the reasoning in *Matter of Fuentes*, that the threats came because of Estrada's status as a police officer, rather than because of his political opinion.

## 2. Imputed Political Opinion/Status as Former Police Officer

Petitioners next argue that the Shining Path imputed a political opinion to Estrada because of his service in protecting the "faceless judges" and his police work in the emergency zone, and persecuted him or will persecute him because of this imputed opinion. *Matter of Fuentes* does not expressly address the issue of "imputed" political opinion, and petitioners contend that the IJ erred by ignoring their argument on this point. Although the IJ did not use the words "imputed political opinion," he stated that he had "read counsel's argument stating that [*Matter of Fuentes*] was not controlling" and that he had concluded that it was. Admin. R. at 81. Thus, he implicitly rejected their "imputed political opinion" argument.

The evidence supports the IJ's conclusion on this point. There is no compelling evidence that suggests the Shining Path persecuted Estrada on account of an imputed political opinion. In fact, he fails to link his persecution to

anything other than his status as a police officer. *See Cruz-Navarro*, 232 F.3d at 1030. Petitioners cite *Velarde v. INS*, 140 F.3d 1305 (9th Cir. 1998), *overruled on other grounds by Falcon Carriche v. Ashcroft*, 335 F.3d 1009 (9th Cir.), *opinion on rehearing*, 350 F.3d 845 (9th Cir. 2003), for the proposition that high-profile police duties (in that case, serving as bodyguard to the daughters of Peru's president) can result in a "politically-charged" position to which political opinion might be imputed. Petitioners fail to make a compelling case, however, that Mr. Estrada's duties, while significant in Peru's war on terrorism, rose to the level of those described in *Velarde*.

Estrada also argues that the IJ failed to consider that if he is returned to Peru, the Shining Path may persecute him for his status as a "former police officer." This argument was part of petitioners' attempt to distinguish *Matter of Fuentes*, which the IJ implicitly rejected. Both *Matter of Fuentes* and *Cruz-Navarro* acknowledge that "[p]ersons who are persecuted because of their status as a former police or military officer . . . may constitute a cognizable social group under the INA," *Cruz-Navarro*, 232 F.3d at 1029; *see Matter of Fuentes*, 19 I. & N. Dec. at 662, because status as a former police officer is an immutable characteristic that is beyond the power of the alien to change. *Matter of Fuentes*, 19 I. & N. Dec. at 662.

-10-

Here, however, petitioners fail to carry their burden of showing that Estrada has a well-founded fear of persecution as a former police officer. The IJ heard testimony that the Shining Path has targeted current political officials for assassination. Admin. R. at 110. Petitioners also presented information that the Shining Path had assassinated one former opponent, a high-profile political activist who left the country and then returned after two years. *Id.* at 454. Petitioners fail to provide compelling evidence, however, that former policemen as a social group, even those who had engaged in anti-terrorist activities, face a well-founded fear of persecution from the Shining Path.

### 3. Other rationales in IJ's decision

We uphold the IJ's decision that this case is governed by *Matter of Fuentes*. Petitioners have failed to demonstrate past persecution or a well-founded fear of future persecution based on political opinion, imputed political opinion, or their membership in a class composed of former police officers. Since they fail to meet the standard for asylum, they also have failed to establish the higher and more difficult standard for withholding of deportation, which requires that they establish "a clear probability of persecution on one of the specified grounds." *Krastev v. INS*, 292 F.3d 1268, 1271 (10th Cir. 2002).

Moreover, because of our holding on the *Matter of Fuentes* issue, we need not consider petitioners' challenges to the other grounds for the IJ's decision,

-11-

including his findings (or lack of same) concerning their ability to relocate.
*See Ustyan v. Ashcroft*, 367 F.3d 1215, 1216 (10th Cir. 2004).

The petition for review is DENIED.