**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 27 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EDWARD ARMAH TAGOE, also
known as Edward Armah Tagoe
Johnson,

Petitioner,

v.

JOHN ASHCROFT, Attorney General
of the United States,

Respondent.

Nos. 03-9561 & 03-9576
(BIA No. A72-450-425)
(Petitions for Review)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **MURPHY** , Circuit Judge, and **CAUTHRON** ,**
Chief District Judge.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

* This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

** The Honorable Robin J. Cauthron, Chief District Judge, United States
District Court for the Western District of Oklahoma, sitting by designation.

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The cases are therefore ordered submitted without oral argument.

Edward Armah Tagoe petitions for review of the decision of the Bureau of Immigration Appeals (BIA) affirming the Immigration Judge (IJ)'s order revoking his previously approved application for asylum and denying his requests for withholding of deportation and voluntary departure. He also seeks review of the BIA's subsequent denial of his motion to reconsider and reopen. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a) (repealed 1996), and we deny the petitions. [1]

### Background

Tagoe entered the United States without inspection in August 1992 and was granted asylum in 1995 based on his assertion that, as a citizen and national of Liberia, he had a well-founded fear of persecution if returned to that country. Later, however, the Immigration and Naturalization Service (INS) received information that Tagoe's asylum application was fraudulent, in that he was a

---

[1]     Our jurisdiction arises under the former provision of the Immigration and Nationality Act, as amended by the transitional rules, because immigration proceedings were commenced against petitioner prior to the effective date of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009 (Sept. 30, 1996), and the BIA's final deportation orders were issued after October 30, 1996. *See Mickeviciute v. INS*, 327 F.3d 1159, 1161-62 (10th Cir. 2003).

citizen of Ghana, not Liberia. [2] After reviewing the documentary evidence and interviewing Tagoe, the INS determined that Tagoe's asylum application was based on fraudulent statements and documents, and that Tagoe was not eligible for asylum. On August 8, 1996, the INS revoked Tagoe's asylum status. *See* 8 C.F.R. 208.24(a)(2) (1996).

During deportation proceedings, Tagoe renewed his requests for asylum, withholding of deportation, and voluntary departure. At the asylum hearing, Tagoe again asserted that he was a citizen of Liberia and that the person who told the INS he was Ghanaian was misrepresenting her relationship with him and was motivated by vindictiveness. He testified that if he returned to Liberia, he would be singled out for persecution because he was an Americo-Liberian (a descendent of freed slaves who immigrated in the 1800s from the United States) and because his father served as an official in the former Liberian government.

In analyzing the evidence, the IJ examined Tagoe's proffered identification documents, reviewed two forensic examination reports, and heard the telephonic testimony of two forensic witnesses. Based on his evaluation of the record, the IJ

---

[2] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice. Its enforcement functions were transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub.L. No. 107-296, 116 Stat. 2135 (2002). Because the events at issue here predate that reorganization, we continue to refer to the INS in this order and judgment.

determined that Tagoe's documentation was fraudulent. Additionally, the IJ decided that, even assuming Tagoe had shown Liberian citizenship, his personal testimony had not established a well-founded fear of persecution. In a decision dated May 22, 1998, the IJ denied all forms of relief from deportation and ordered Tagoe deported to Ghana.

The BIA summarily affirmed the IJ's decision on April 22, 2003. Tagoe then filed a motion to reconsider and reopen, requesting a more thorough review of his appeal issues and a reopening in order to apply for adjustment of status based on a pending visa petition filed by his present spouse, a United States citizen. The BIA refused to reconsider its previous decision and held that Tagoe had failed to provide clear and convincing evidence of a bona fide marriage or to show that he merited the discretionary relief of reopening.

## Discussion

In this court, Tagoe asserts that (1) the BIA failed to address his appeal issues with specificity; (2) the IJ and the BIA incorrectly determined that he was not entitled to asylum, withholding of deportation, and voluntary departure; (3) the IJ's decision was based on contradictory evidence not admitted into the

record; and (4) the BIA erred in denying Tagoe's motion to reconsider and his motion to reopen based on his marriage of almost five years. [3]

Tagoe's first claim, which takes exception to the brevity of the BIA's decision, is of no legal significance. Under the BIA's summary affirmance regulations, the IJ's decision is the "final agency action." *Yuk v. Ashcroft*, 355 F.3d 1222, 1230 (10th Cir. 2004). Accordingly, when "the BIA summarily affirm[s] the IJ's decision, we review the IJ's analysis as if it were the BIA's." *Estrada-Escobar v. Ashcroft,* No. 02-9568, 2004 WL 1616404, at *2 (10th Cir. July 20, 2004)).

With regard to Tagoe's second claim, in which he explicitly challenges the denial of asylum, "[w]e review the IJ's factual findings for substantial evidence in the record." *Id.* at *3. In asylum cases, the IJ's findings "are conclusive unless the record demonstrates that 'any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting 8 U.S.C. § 1252(b)(4)(B)). The IJ determined that the documents Tagoe submitted to show Liberian birth and citizenship were fraudulent and, therefore, that Tagoe was not entitled to asylum status. Our review of the record convinces us that the IJ's findings are supported

---

[3] In number 03-9561, Tagoe petitions for review of the denial of his request for asylum; in number 03-9576, he petitions from review of the decision to deny his motion to reconsider and reopen.

by substantial evidence and that Tagoe did not provide any evidence compelling a contrary conclusion. [4]

Because Tagoe did not meet the standard for asylum, he also failed to establish the higher and more difficult standard for withholding of deportation, which requires a showing of a "clear probability of persecution on one of the specified grounds." *Krastev v. INS*, 292 F.3d 1268, 1271 (10th Cir. 2002). As for the IJ's denial of voluntary departure, under the transitional rules, we lack jurisdiction to review this discretionary decision. *Ali v. Ashcroft,* 366 F.3d 407, 412 (6th Cir. 2004); *Regalado-Garcia v. INS*, 305 F.3d 784, 786 n.2 (8th Cir. 2002); *Tamas-Mercea v. Reno*, 222 F.3d 417, 427 (7th Cir. 2000).

Tagoe next challenges a comment of the IJ about changing and improving conditions in Liberia. Tagoe asserts that it was improper for the IJ to suggest the possibility of changed country conditions, in that the INS did not present this argument as a basis for revocation of asylum. The INS, however, determined that Tagoe was a resident of Ghana and should be deported to that country. Because

---

[4] Tagoe also attacks the initial revocation of his asylum status for a showing of fraud in the application process. The regulation applicable to Tagoe's case provided that an asylum officer may revoke a grant of asylum for several reasons, including a showing of fraud in the application process. *See* 8 C.F.R. § 208.24(a)(1) (1996). This determination was not the final order of the agency, since Tagoe was permitted to reassert an asylum claim in his subsequent deportation proceeding. *Id.*, § 208.24(e). Thus, we lack jurisdiction to consider this aspect of Tagoe's appellate argument.

we have concluded that the evidence supports this determination, Tagoe's factual contentions about conditions in Liberia are immaterial to a resolution of this appeal.

Finally, Tagoe asserts that the BIA erred in denying his motion to reopen, a claim which we review under the abuse of discretion standard. *Mickeviciute v. INS*, 327 F.3d 1159, 1162 (10th Cir. 2003). An abuse of discretion may be found only when the BIA's decision "provides no rational explanation, inexplicably departs from established policies, is devoid of any reasoning, or contains only summary or conclusory statements." *Id.* (quotation omitted). "Motions for reopening of immigration proceedings are disfavored" and "[t]his is especially true in a deportation proceeding where, as a general matter, every delay works to the advantage of the deportable alien who wishes to stay in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992).

Tagoe's motion to reopen first asked the BIA to reconsider its single-board member disposition of his appeal. Under 8 C.F.R. § 1003.2(b)(3), "[a] motion to reconsider based solely on an argument that the case should not have been affirmed without opinion by a single Board Member, or by a three-Member panel, is barred." Accordingly, the BIA properly dismissed Tagoe's motion to reconsider.

Tagoe's motion also requested reopening of his case for the submission of new evidence showing entitlement to readjustment of status based on his marriage to a United States citizen. This type of motion, premised on a marriage that occurred during deportation proceedings, "'[must] present[ ] clear and convincing evidence indicating a strong likelihood that the [petitioner's ] marriage is bona fide.'" *Malhi v. INS* , 336 F.3d 989, 993-94 (9th Cir. 2003) (quoting *In re Velarde-Pacheco* , 23 I. & N. Dec. 253, 256 (BIA 2002)); *see also* 8 C.F.R. § 204.2(a)(1)(iii)(A)-(B) (discussing petitioner's burden in overcoming the regulatory presumption that alien entered into intra-proceeding marriage for the purpose of evading the immigration laws).

> [A]n applicant must offer evidence that is probative of the motivation
> for marriage, not just the bare fact of getting married. To qualify, a
> marriage must be based on an actual and legitimate relationship
> rather than a subjective desire to adjust status based on marriage, and
> the applicant's evidence must reflect this.

*Malhi* , 336 F.3d at 994. Further, even if the BIA determines that a petitioner demonstrated a bona fide marriage, it still may exercise its discretion to deny relief. *See INS v. Abudu* , 485 U.S. 94, 105 (1988); *see also* 8 C.F.R. § 1003.2(a) ("The Board has discretion to deny a motion to reopen even if the party moving has made out a prima facie case for relief.").

The documents submitted to show the bona fides of Tagoe's marriage may be evaluated in light of the entire proceeding. The IJ's oral deportation ruling

was issued on May 22, 1998, at which time Tagoe described his marriage to a woman from Ghana, without expressing any intention of ending that marriage and entering into another. The purported dissolution of the earlier marriage occurred less than one month later, and the new marriage took place four months later. Adverse factors presented by Tagoe's motion included the determination that Tagoe's documents purporting to show Liberian citizenship were fraudulent and evidence of Tagoe's unrelated criminal conviction for making a false statement.

Cast against this background, the BIA did not err in determining that Tagoe had failed to provide clear and convincing evidence of a bona fide marriage to a United States citizen and, in any event, did not merit reopening as a matter of discretion. We therefore affirm the denial of his motion to remand.

The petitions for review are DENIED.

Entered for the Court

Deanell Reece Tacha
Chief Judge