**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**June 29, 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ALFA BA,

        Petitioner,

v.

ALBERTO R. GONZALES, *

        Respondent.

No. 04-9516
(BIA No. A78 355 117)
(Petition for Review)

**ORDER AND JUDGMENT** **

Before **EBEL** , **BALDOCK** , and **KELLY** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

\*     On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General. In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

\*\*     This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Alfa Ba, a citizen of Sierra Leone, seeks asylum in the United States. An immigration judge granted his request, but the Board of Immigration Appeals reversed. We affirm the denial of asylum.

## I.

Ba was born in 1972 in the city of Kabala, in Sierra Leone. In 1994, Ba's father ascended to a leadership position in Kabala, which Ba characterized as "the chief of the village." R. at 95. In this position, Ba's father encouraged the people of Kabala to support the government of Sierra Leone in its conflict with a rebel group known as the Revolutionary United Front (RUF).

In 1999, the RUF entered Kabala and murdered Ba's father and mother, along with three other people in their house. Ba was not at home when this massacre occurred, but he and other Kabala residents were subsequently taken captive by the RUF. It appears from Ba's testimony that his captors never connected him to his father. Nevertheless, he was beaten daily, resulting in scars that were still visible at his asylum hearing. He also saw a man summarily executed for expressing support for the government.

Eventually, Ba escaped from the RUF and fled to Guinea. From there, he made his way to the United States, arriving in April 2000. He applied for asylum

seven weeks after his arrival. The Immigration and Naturalization Service denied Ba's application and commenced removal proceedings.

In proceedings before an immigration judge (IJ), Ba conceded removability but continued to press his asylum claim. The IJ found Ba's testimony was "sufficiently detailed, consistent and believable to provide a plausible and coherent account of the basis for his fears." R. at 78. The IJ further determined that the RUF would have imputed a hostile political opinion to Ba if they had linked him to his father and that they would have killed him based on this imputed opinion. In light of these conclusions, the IJ granted Ba's application for asylum.

The Board of Immigration Appeals (BIA) reversed. Although it accepted the IJ's credibility determination, the BIA held that Ba's testimony did not establish that the RUF persecuted him "on account of a protected ground." Id. at 2. The BIA further held that conditions in Sierra Leone had changed enough to eliminate any reasonable fear of future persecution.

II.

As is relevant here, an alien may demonstrate that he is entitled to asylum by showing either that he "has a well-founded fear of future persecution" or that he "has suffered past persecution, which gives rise to a rebuttable presumption of a well-founded fear of future persecution." Wiransane v. Ashcroft, 366 F.3d 889,

-3-

893 (10th Cir. 2004) (alterations and quotations omitted).  We have defined persecution as "the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive," noting that it "must entail more than just restrictions or threats to life and liberty."  Id. (quotations omitted); see also 8 U.S.C. § 1101(a)(42)(A) (defining a "refugee" as a person who has been persecuted or may face persecution in his home country "on account of race, religion, nationality, membership in a particular social group, or political opinion").  When the BIA has denied an asylum application, "[w]e will not reverse the agency's decision unless the evidence compels the conclusion that petitioner[] [has] a well-founded fear of persecution on one of the . . . grounds" set forth in 8 U.S.C. § 1101(a)(42)(A).  Estrada-Escobar v. Ashcroft, 376 F.3d 1042, 1046 (10th Cir. 2004).[1]

## A. Past Persecution

It is undisputed that Ba was kidnaped and tortured by the RUF, and we assume for purposes of decision that these acts would constitute persecution if accompanied by the requisite motivation.  The BIA, however, found proof of such motivation lacking.  We uphold this determination.

---

[1]     Congress recently modified a number of provisions governing asylum.     See REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, § 101, 119 Stat. 231, 302-06.  Although the REAL ID Act went into effect on May 11, 2005, only a handful of its provisions apply to pending cases.     See id. § 101(h), 119 Stat. at 305-06.  None of these provisions affect our analysis in this appeal.

Ba contends that the RUF persecuted him based on certain opinions imputed to him and that persecution based on imputed opinions can satisfy § 1101(A)(42)(A). As the BIA found, however, there was no evidence that the RUF ascribed any particular political views to Ba and their other captives. It is possible that Ba's kidnappers presumed that he and other Kabala residents shared Ba's father's support for the Sierra Leonean government (as Ba alleges), but other inferences are also possible from the record; for example, the rebels may have believed their captives held neutral or even pro-RUF views and were therefore ripe for conscription. See INS v. Elias-Zacarias, 502 U.S. 478, 482 (1992); Sangha v. INS, 103 F.3d 1482, 1488-90 (9th Cir. 1997). Under these circumstances, we must uphold the BIA's determination that Ba failed to prove persecution on account of political beliefs.

## B. Future Persecution

On the issue of future persecution, the BIA relied on State Department country reports stating that Sierra Leone had experienced a reduction in civil strife generally, and RUF abuses in particular, since Ba departed. Ba contends the BIA's analysis was inadequate under 8 C.F.R. § 1208.13(b)(1) and Matter of Chen, 20 I. & N. Dec. 16, 1989 WL 331860 (BIA 1989). We disagree.

Under Chen and § 1208.13(b)(1), an asylum applicant who proves that he suffered persecution in the past is presumed to have a well-founded fear of future

persecution. One way for the Government to rebut this presumption is to show that "[t]here has been a fundamental change in circumstances" since the persecution occurred. Id. § 1208.13(b)(1)(i)(A); cf. Chen, 20 I. & N. Dec. at 18 (discussing the presumption that arises from proof of past persecution and noting that the Government can rebut this presumption by presenting "evidence that there is little likelihood of present persecution"). Ba maintains that the BIA's findings do not satisfy § 1208.13(b)(1)(i)(A) and Chen. These authorities are inapposite, however, as Ba has not made the showing of past persecution necessary to invoke the § 1208.13(b)(1) presumption. See Akhtar v. Gonzales, 406 F.3d 399, 406 (6th Cir. 2005) (rejecting Chen claim based on asylum applicant's failure to prove past persecution). For this reason, and because Ba has not otherwise challenged the BIA's conclusion about current conditions in Sierra Leone, we affirm the BIA's determination regarding future persecution.

III.

For the foregoing reasons, we affirm the decision of the BIA denying Ba's request for asylum.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge