**F I L E D**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

ALEX SOEWANDY; FNU WAINAH,

   Petitioners,

 v.

ALBERTO R. GONZALES, Attorney
General, [*]

   Respondent.

No. 04-9517
(Nos. A77-868-399 and   A77-868-400)
(Petition for Review)

**ORDER AND JUDGMENT** [**]

Before **SEYMOUR** , **McCONNELL** , and **TYMKOVICH** , Circuit Judges.

   After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

---

[*]   On February 4, 2005, Alberto R. Gonzales became the United States
Attorney General.  In accordance with Rule 43(c)(2) of the Federal Rules of
Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as the
Respondent in this action.

[**]   This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

argument. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Petitioner Alex Soewandy, as lead petitioner (petitioner), together with his wife, Fnu Wainah, seeks review of a final order of the Board of Immigration Arguments dismissing his appeal and affirming without opinion the Immigration Judge's (IJ's) decision denying his application for asylum, restriction on removal, [1] and protection under the United Nations Convention Against Torture. Understanding our lack of jurisdiction, petitioner does not urge us to review the IJ's determination that his asylum request was untimely. *See Tsevegmid v. Ashcroft*, 336 F.3d 1231, 1234-35 (10th Cir. 2003); 8 U.S.C. § 1158(a)(3). He does, however, request review of the IJ's final order of removal, a matter over which we have jurisdiction pursuant to 8 U.S.C. § 1252(a). *See Tsevegmid*, 336 F.3d at 1235.

Because the BIA summarily affirmed the IJ's decision, we review the latter as if it were the decision of the BIA. *Id.* We review the IJ's decision under the substantial evidence standard, treating the administrative fact findings as

---

[1]     Prior to passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), restriction on removal was referred to as "withholding of removal." Because this claim was filed after IIRIRA's effective date, we will use the new statutory "restriction on removal" terminology in this order and judgment. *See Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).

conclusive unless the record shows a reasonable fact-finder would be compelled to conclude to the contrary. *Sviridov v. Ashcroft*, 358 F.3d 722, 727 (10th Cir. 2004).

Petitioner is a citizen of Indonesia. He is also Christian and of Chinese descent, making him a member of both a religious and an ethnic minority. Petitioner claims that he suffered past persecution because of his minority status.

In support of his claim that he qualifies for restriction on removal, petitioner offers evidence of the treatment of Sino-Indonesians in general and of the various specific harms suffered by him and his wife individually. The general country evidence establishes that Chinese had to pay more for government identity cards and show more documentation; that it was harder for Chinese to attend university and to get a driver's license; that no ethnic Chinese were policemen; that Chinese were taunted by Muslims as "pork eaters" and told they were merely guests in Indonesia; and that, while growing up, Chinese were generally threatened and treated differently from other Indonesians.

As for evidence of individualized persecution, the bulk of petitioner's evidence goes to episodes of mugging and general thuggery directed at him and his wife because the perpetrators wanted money. Additionally, petitioner testified that in December of 1997, unidentified persons threatened to burn the church he attended. In May 1998, when Indonesia experienced country-wide violence that

-3-

led to the death of thousands of Chinese, petitioner's parents' home was burned, but his parents did not leave the country. Petitioner's widowed mother continues to live in Indonesia as do many members of both his and his wife's families. Petitioner still owns property in Indonesia which he rents to members of his wife's family.

As for religious persecution, in addition to the threat to his church building, petitioner's only evidence was that he could not wear a cross, had to hide his Bible in a bag in order to carry it to church, was pressured to convert to Islam, and had stones thrown at him – presumably by Muslims, although petitioner did not directly testify to the identity of the stone-throwers.

To establish eligibility for asylum, and, by extension, to qualify for restriction on removal, a claimant must establish refugee status, meaning that he is unable to return to his country due to persecution based on "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). The offensive treatment must be extreme. *Korablina v. INS*, 158 F.3d 1038, 1044 (9th Cir. 1998). More than mere harassment is required. *Tamas-Mercea v. Reno*, 222 F.3d 417, 424 (7th Cir. 2000). "[A]cts of common criminality or personal hostility . . . do not implicate [refugee status]." *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir. 2003). "We will not reverse the agency's decision unless the evidence compels the conclusion that petitioners

have a well-founded fear of persecution because of one of the protected grounds." *Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1046 (10th Cir. 2004).

In contrast to an asylum claim, which requires proof of a "well-founded fear" of persecution, restriction on removal requires proof that persecution is "more likely than not." *Elzour v. Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004) (quotation omitted). Petitioner can satisfy this standard of proof in one of two ways. First, he can demonstrate that he suffered past persecution in Indonesia, thus raising a presumption that his life or freedom would be threatened in the future. 8 C.F.R. § 1208.16(b)(1). If petitioner establishes past persecution, a rebuttable presumption arises that he has a reasonable fear of future persecution. *Kapcia v. INS*, 944 F.2d 702, 709 (10th Cir. 1991) (discussing role of presumption in claims for asylum); *see also* 8 C.F.R. § 1208.16(b)(1)(i) (same with regard to restriction on removal). The burden then shifts to the INS[2] to rebut this presumption. *Kapcia*, 944 F.2d at 709. One avenue of rebuttal is to show that country conditions have changed such that petitioner's life or freedom would not be threatened. *See* 8 C.F.R. § 1208.16(b)(1)(i)(A). If petitioner cannot show past persecution, he can satisfy the statutory standard by showing that his life or

_____

[2] On March 1, 2003, the Immigration and Naturalization Service (INS) ceased to exist. Its responsibilities were divided among three agencies within the new Department of Homeland Security. Because the INS commenced these deportation proceedings, we refer to the relevant government agency as the INS. *Berrum-Garcia v. Comfort*, 390 F.3d 1158, 1160 n.1 (10th Cir. 2004).

freedom would be threatened in the future by demonstrating that it is more likely than not that he would be persecuted on account of a protected ground. *Id.* § 1208.16(b)(2).

The IJ conducted two hearings in this case. At the end of the first hearing, the IJ stated: "If there is a change of circumstance, I'm going to tell you right now, I'm probably not going to grant it. If there hasn't been much of a change in circumstance and we don't know much about this woman here [President Megawati] that I want to know about because I don't know her." R. at 149. Based on his desire to learn more about the ethnicity of the current Indonesian president and current conditions in the country, the IJ ordered supplemental briefing and conducted a second hearing. After the second hearing, the IJ denied all relief.

Citing the IJ's observation after the first hearing, petitioner contends the IJ had determined that he had established past persecution and that the purpose of the second hearing was to gather additional evidence to determine whether country conditions had changed sufficiently to rebut any presumption of future persecution. 8 C.F.R. § 1208.16(1)(i)(A). Petitioner argues, however, that in conducting the second hearing, the IJ failed to hold the INS to the correct standard of proof, failed to require particularized evidence of changed country conditions, and incorrectly placed the burden of proving countrywide persecution and of

-6-

showing a clear probability of future persecution on petitioner. Petitioner also contends generally that the IJ erred in evaluating and weighing his testimony.

We will assume, without deciding, that the IJ found petitioner had established past persecution. As mentioned above, once that determination was made, petitioner became the beneficiary of a rebuttable presumption that he had reason to fear similar persecution in the future. *Kapcia*, 944 F.2d at 709 (discussing role of presumption in asylum claims). The burden then shifted to the INS to present evidence showing "little likelihood of present persecution." *Id.* (quotation omitted). In appropriate cases, the IJ may take administrative notice of changed circumstances. *Id.*

Petitioner argues that the IJ incorrectly relieved the INS of its burden to rebut this presumption. We disagree. It is clear that the IJ took administrative notice of the State Department Country Reports, particularly the report dealing with changed country conditions as of 2001, as well as other record evidence. That evidence establishes that conditions for ethnic Chinese in Indonesia have generally improved since mid-1998. While evidence regarding improvement on the religious-freedom front is more equivocal, we find that fact irrelevant. Assuming, as we have, that the IJ found past persecution, his finding was based exclusively on petitioner's ethnicity, not on his religious status, and substantial evidence supports the conclusion that conditions have improved for ethnic Chinese

in Indonesia. The presumption of future persecution, therefore, was rebutted, and the INS's burden to refute the likelihood of present persecution was discharged. *See id.*

As for petitioner's challenge to the evaluation and weight given the evidence, our role is not to re-weigh the evidence or to evaluate witness credibility. *Woldemeskel v. INS*, 257 F.3d 1185, 1189 (10th Cir. 2001). By taking issue with the evidence cited by the IJ from the country reports and countering it with his own evidence, petitioner is essentially asking us to substitute our judgment for that of the IJ, a course we cannot take. Because the IJ's decision is supported by substantial evidence and the record fails to demonstrate that any reasonable adjudicator would be compelled to conclude petitioner is eligible for restriction on removal, *see Sviridov*, 358 F.3d at 727, the petition for review is **DENIED.**

Entered for the Court


Stephanie K. Seymour
Circuit Judge

-8-