**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**September 2, 2005**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

KANHAI LAL SAH,

Petitioner,

v.

ALBERTO R. GONZALES;     *
MICHAEL CHERTOFF,     **

Respondents.

No. 04-9556
(Agency No. A71-948-896)
(Petition for Review)

ORDER AND JUDGMENT     ***

Before **SEYMOUR** , **McCONNELL** , and **TYMKOVICH** , Circuit Judges.

---

\*      On February 4, 2005, Alberto R. Gonzales became the United States Attorney General.  In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Gonzales is substituted for John Ashcroft as a Respondent in this action.

\*\*      On March 3, 2005, Michael Chertoff became the Secretary of the Department of Homeland Security.  In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Mr. Chertoff is substituted for Tom Ridge as a Respondent in this action.

\*\*\*      This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This appeal arises from a decision by an immigration Judge (IJ) denying a request by Appellant Kanhai Lal Sah for asylum or withholding of removal. The Board of Immigration Appeals (BIA) affirmed this decision. We also affirm.

I.

Mr. Sah was born in India in 1964 and came to the United States in 1990. He is Hindu. [1] Shortly before his entry visa expired in 1991, Sah applied for asylum, alleging that he would be targeted by Muslims in his home province, located in the southeastern part of India.

When Sah lived in India, he was active in a group called Vishwa Hindu Parishad (Vishwa). Vishwa, according to Sah, is an organization committed to Hindu nationalism. In his 1991 asylum application, Sah stated that Vishwa was "fighting to demolish Babri Mosque," a mosque in southern India, because "[t]his mosque is built on our sacred land." R. 148. In fact, in 1992, after Sah had

---

[1]     India is home to more than one billion people, with Hindus representing a substantial majority.     See The World Factbook: India    , at http://www.cia.gov/cia/ publications/factbook/geos/in.html (last updated Apr. 21, 2005). Muslims are the largest religious minority in India, accounting for roughly 12 percent of the population.     See id.

already come to the United States, Hindu extremists rioted and destroyed the mosque. In his asylum application, Sah noted that he "took a very active part in organizing and conducting [anti-mosque] meeting[s]" and that he "actively participated in the riots to [attempt to] demolish the Babri Mosque." Id.

Nothing in the record indicates that the Government ever ruled on Sah's asylum application. Instead, the Government in 1997 initiated removal proceedings based on Sah's failure to depart from the United States after his visa expired. He then filed a second application for asylum or withholding of removal, asserting, among other things, his fear of persecution if he returned to India. In explaining his participation in Vishwa in the second application, Sah said Vishwa's goal was to "retake *or share* the land where the Barbri [*sic*] Mosque is located." R. 140 (emphasis added). Sah subsequently testified at his removal hearing that Vishwa was not violent and that he personally did not favor the destruction of the Babri Mosque.

The IJ denied the request for asylum, relying largely on three findings. First, the IJ concluded that Sah's oral statements were not credible in light of the contradiction between his testimony and his original asylum application. Second, the IJ found that, notwithstanding his testimony to the contrary, Sah had participated in the persecution of non-Hindus and thus was ineligible for asylum. Third, the IJ noted that "India has approximately 800 million Hindus living there

-3-

and [Sah] has not shown that he could not live in another area where it is more peaceful for people of his religion." R. 46.

On appeal, the BIA held that the IJ's credibility finding was supported by the record. Accordingly, the Board affirmed the decision denying Sah's asylum application.

II.

Sah initially challenges the IJ's factual findings. The BIA affirmed the IJ's credibility finding and otherwise relied on the IJ's disposition of the case. We review the IJ's findings to determine whether there was "substantial evidence in the record" to support them. Estrada-Escobar v. Ashcroft, 376 F.3d 1042, 1046 (10th Cir. 2004); cf. Gemechu v. Ashcroft, 387 F.3d 944, 947 (8th Cir. 2004) (stating that the IJ's findings should be treated as part of the final agency decision to the extent that the BIA adopts those findings).

Ordinarily, an alien seeking asylum must establish that he is a refugee who faces or has faced persecution in his homeland. See 8 U.S.C. §§ 1101(a)(42) & 1158(b)(i). To establish refugee status, the applicant must demonstrate that he has suffered past persecution or has "a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." Id. § 1101(a)(42)(A). "Persecution" under this section means not only persecution by the government but also by a non-governmental group that

-4-

the government is "unwilling or unable to control." Estrada-Escobar v. Ashcroft, 376 F.3d 1042, 1046 (10th Cir. 2004) (citation omitted). A person may not claim refugee status under the statute, however, if he "ordered, incited, assisted, or otherwise participated in the persecution of any person on account of . . . religion." 8 U.S.C. § 1101(a)(42); see also id. § 1158(b)(2)(A)(i) (listing persecution of others (described in language identical to § 1101(a)(42)) as circumstance disqualifying applicant from asylum). Nor does an applicant qualify for asylum by merely showing a well-founded fear of returning to a particular city or region in his home country; rather, he must demonstrate he is unable to return to any place within that country. 8 C.F.R. §§ 208.13(b)(2)(ii), 1208.13(b)(2)(ii). In this case, the IJ found that Sah was ineligible for asylum based on his participation in the persecution of non-Hindus and the lack of a well-founded fear of returning to his home country.

Sah's original asylum application provided evidence of his role in the persecution of Muslims by stating that Sah had a leadership role in a group favoring the demolition of the Babri Mosque. Sah bore the burden of refuting this evidence and demonstrating that he was not disqualified from seeking asylum. See Hernandez v. Reno, 258 F.3d 806, 812 (8th Cir. 2001); see also Elzour v. Ashcroft, 378 F.3d 1143, 1151 n.10 (10th Cir. 2004) (applying a similar allocation of burdens under a different provision of § 1158(b)(2)(A)). Sah attempted to meet

this burden in two ways. First, he asked the IJ to reinterpret the references to Vishwa's goals with respect to the mosque in the original asylum application as to "share or remove" it rather than to "demolish" it. R. 63. Second, he testified that Vishwa actually favored sharing the Babri Mosque site with Muslim worshipers and, more generally, opposed violence against non-Hindus.

The IJ found Sah's representations not credible. The IJ's credibility determination relied largely on the inconsistency between Sah's characterization of his background and conduct at the hearing and his earlier, more militant statements in the asylum papers. The IJ also considered it notable in assessing credibility that Sah testified that this mother and brother died two years apart, when official records showed that their deaths were separated by only a few weeks. The IJ found that Sah's misstatement of such a basic fact—a fact used by Sah in order to convince the IJ of future persecution if he returned to India—cast significant doubt on Sah's credibility. Finally, the IJ found that Vishwa was affiliated with the Bharatiya Janata Party (BJP), which a State Department report characterized as "a Hindu nationalist party with links to Hindu extremist groups that have been implicated in violent acts against Christians and Muslims." R. 45 (quotation omitted).

Sah contends that the IJ's findings are unsupported by the evidence. We disagree. The record supports the IJ's conclusion that Sah made inconsistent

-6-

statements over time to bolster what he thought was his strongest argument for asylum. In light of these "specific, cogent reasons for disbelieving the witness' testimony," we must uphold the IJ's credibility finding. Elzour, 378 F.3d at 1152 (quotation omitted).

Sah also claims that the IJ erred by finding that Vishwa was affiliated with the BJP. Our review of the record suggests that the IJ may have indeed confused the BJP with a group called Rashtriya Swayamsewak Sangh (RSS). According to the State Department, there is considerable overlap among the leadership and membership of the BJP and the RSS, but "the BJP is an independent political party, and the degree of RSS influence over its policy making is not clear." R. 112. Sah acknowledged that Vishwa was linked to the RSS but did not describe any connection with BJP.

Nevertheless, the connection between Vishwa and the RSS does not undermine the IJ's conclusion that Sah was complicit in the attempted persecution of Muslims and Christians. It is evident from the State Department's report about India that the RSS and the BJP espouse similar principles. Thus, it is immaterial whether Vishwa was linked to the RSS (as described by Sah) or the BJP (as stated by the IJ); the effect on this appeal is the same. What is important is Sah's own evidence about his role in anti-Muslim activities. Accordingly, any confusion on the part of the IJ was harmless and provides no basis for reversal of the decision

denying asylum.   See Nazaraghaie v. INS  , 102 F.3d 460, 465 (10th Cir. 1996) (holding that BIA's alleged failure to consider particular evidence was harmless and therefore did not merit reversal).

Finally, we note that Sah has not challenged the IJ's finding that Sah could relocate to a region within India that is more accepting of Sah's religion and culture.  Indeed, this determination would be difficult to refute; as approximately 800 million Hindus live in India (nearly 80% of the population), they constitute the dominant religion and culture in that country.  While we acknowledge that portions of Sah's testimony suggest that Vishwa activists face reprisals throughout India, we will not overturn the IJ's finding when Sah himself has not challenged it. Cf. United States v. Cantley  , 130 F.3d 1371, 1377-78 (10th Cir. 1997) (according dispositive effect to the district court's uncontested finding that the defendant lacked standing to raise a Fourth Amendment claim).

## III.

In his last remaining claim, Sah asserts that the BIA improperly engaged in its own fact-finding on appeal.  We disagree.  In asserting this claim, Sah has not identified any specific factual determination made by the BIA.  Because he has failed to develop this argument adequately, we cannot grant relief on the record before us.   See Threet v. Barnhart  , 353 F.3d 1185, 1190 (10th Cir. 2003).

We note, moreover, that the BIA's opinion does not support Sah's characterization of it. Contrary to Sah's assertion, the BIA did not engage in de novo fact-finding, in violation of 8 C.F.R. § 1003.1(d)(3)(iv). Instead, the BIA properly assessed whether the IJ's factual determinations were clearly erroneous, as prescribed by 8 C.F.R. § 1003.1(d)(3)(I).

## IV.

For the foregoing reasons, we AFFIRM the decision of the BIA denying Sah's request for asylum or withholding of removal.

Entered for the Court

Timothy M. Tymkovich
Circuit Judge