FILED
United States Court of Appeals
Tenth Circuit

August 6, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

SANTOS CRISTINO
DELCID-ZELAYA,

Petitioner,

v.

ERIC H. HOLDER, JR.,
United States Attorney General,

Respondent.

No. 12-9589
(Petition for Review)

---

**ORDER AND JUDGMENT**[*]

---

Before **HARTZ**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **EBEL**, Circuit Judge.

---

Petitioner Santos Cristino Delcid-Zelaya is a native and citizen of El Salvador.

Appearing in this court pro se, he petitions for review of an order of the Board of

Immigration Appeals (BIA) that dismissed his administrative appeal from an order of

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

the immigration judge (IJ) that denied his application for asylum, restriction on removal, and protection under the United Nations Convention Against Torture (CAT). We deny the petition for review.

## I. Background

Petitioner entered the United States without inspection in July 2008, when he was sixteen years old. Removal proceedings were also initiated in 2008. Petitioner conceded removability but applied for asylum, restriction on removal, and protection under the CAT. The only box Petitioner checked as a basis for his application for relief was nationality.

Petitioner was represented by counsel at the merits hearing in October 2011. He testified that he came to the United States because El Salvador was a "very dangerous place to be. There is a lot of criminality." Admin. R. at 143. He took buses and taxis to get here, but went through a desert on foot to cross the border with Mexico. He said that he risked the dangers of wildlife and getting lost because "this is the country of freedom and happiness, and where I come from there was a lot of suffering." *Id.* at 147. He said that he is afraid to go back to El Salvador.

Petitioner testified about two specific traumatic experiences. In 2006, when he was fourteen, he was visiting one of his older brothers who lived about an hour away. They were threatened on a bus by three masked gang members who wanted money. His brother was robbed and beaten. Petitioner was scared, but was not harmed. His brother reported the assault to the police, but Petitioner and his brother could not

- 2 -

identify the assailants, so nothing was done. Petitioner also believed that the police would not protect them because the police were also afraid. The men also threatened to harm Petitioner's family's home, but his family was afraid to report that to the police.

Petitioner also testified that, on his way to work one day in 2007, when he was sixteen, he discovered the body of an acquaintance in the street. His friend had been killed with a machete. Petitioner did not see the murder, but he was very unsettled by the violence committed against his friend.

Petitioner also testified that street vendors near his home were attacked by gang members who wanted money. They started shooting at each other, he said. He was not involved in this battle, but he heard the shots. He said that he was also a vendor and got into fights with gang members who tried to take away his belongings and his money. He did not pay them, and they threw his merchandise on the floor. He said that his family owned a small store, and he believed that they were perceived as having money.

Petitioner stated that he had never been convicted of a crime, and he refused invitations to join a gang. He believed that he would be recognized by the gang members who had tried to recruit him as a person who has cash. He asserted that El Salvador is a small country and people would know if a person was returning from the United States or, if the person was unknown, it would be assumed that he was returning from the United States and had money. He said that conditions had not

improved in El Salvador since he left, and he could not relocate to another part of El Salvador because he had no family anywhere else.

In her decision, the IJ found Petitioner to be a credible witness. But the IJ found that Petitioner's nationality was not a central reason for his past mistreatment or fears of future mistreatment, and that being a victim of crime does not establish eligibility for asylum. Admin. R. at 68 (citing *Vatulev v. Ashcroft*, 354 F.3d 1207 (10th Cir. 2003)). In light of our opinion in *Rivera-Barrientos v. Holder*, 658 F.3d 1222 (10th Cir. 2011), *revised on other ground on denial of reh'g en banc*, 666 F.3d 641 (10th Cir. 2012), the IJ considered Petitioner's testimony to more likely fall into the category of a particular social group than nationality, but the IJ found that the incidents Petitioner had described were not linked to his membership in a particular social group and that he had not even defined a particular social group of which he was a member. The IJ noted that the only characteristic Petitioner had described was that he would be perceived to be wealthy, but he had not submitted any evidence to show that society in El Salvador considered wealthy people to be a distinct group. Finally, the IJ found that there was no evidence to show that Petitioner's "encounters with gang members were motivated by anything more than a desire to rob and extort money from [him] and his family as part of a criminal act." Admin. R. at 70. The IJ concluded that Petitioner had failed to establish his eligibility for asylum, had necessarily failed to meet the higher standard for restriction on removal, and had produced no evidence that he would be tortured in El Salvador to support his claim

for protection under the CAT. Petitioner appealed to the BIA, appearing through counsel.

The BIA determined in a brief order that Petitioner failed to show any clear error in the IJ's findings of fact. The BIA also agreed with the IJ's conclusions that Petitioner had failed to establish his eligibility for asylum, restriction on removal, or protection under the CAT, and that he had failed to demonstrate a nexus between the harm he had suffered or feared in the future and a statutorily protected ground. The BIA dismissed the appeal, and Petitioner filed this petition for review.

## II. Issues on Appeal, Standards of Review, and Discussion

Petitioner argues on appeal that he qualifies for asylum and restriction on removal based on his political opinion (because he refused to join gangs) and his membership in a particular social group (consisting of El Salvadorans who are returning to El Salvador from the United States and perceived to be wealthy). Petitioner's argument that he was persecuted based on his political opinion because he refused to join gangs is so superficially developed as to be waived. *See Franklin Sav. Corp. v. United States*, 180 F.3d 1124, 1128 n.6 (10th Cir. 1999). We will consider his argument that the fact that he will be returning from the United States is an immutable characteristic and that El Salvadorans who go back to El Salvador are socially visible, such that they should be treated as a social group under immigration law.

"To be eligible for asylum, an alien must establish by the preponderance of the evidence that he or she is a refugee." *Rivera-Barrientos*, 666 F.3d at 645. "The [Immigration and Nationality Act] defines a 'refugee' as an alien unable or unwilling to return to the country of origin 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Id.* at 645-46 (quoting 8 U.S.C. § 1101(a)(42)(A)) (emphasis omitted). There are three ways to obtain refugee status. "First, through evidence of a well-founded fear of future persecution." *Id.* at 646. "Second, through a showing of past persecution, which gives rise to a rebuttable presumption of a well-founded fear of future persecution." *Id.* "And finally, through a showing of past persecution so severe as to provide a compelling argument against removal, even though there is no danger of future persecution on the basis of a protected ground." *Id.* "Aliens basing their asylum claims upon a well-founded fear of future persecution must show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Estrada-Escobar v. Ashcroft*, 376 F.3d 1042, 1046 (10th Cir. 2004) (internal quotation marks omitted).

To be entitled to restriction on removal, an applicant must show a "'clear probability of persecution' on account of one of the statutorily protected grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1202 (10th Cir. 2006) (quoting *Elzour v.*

- 6 -

*Ashcroft*, 378 F.3d 1143, 1149 (10th Cir. 2004)).[1] "Applicants who cannot establish a well-founded fear under asylum standards will necessarily fail to meet the higher burden of proof required for [restriction on] removal . . . ." *Id.* Petitioner does not present any argument related to his CAT claim, so we need not set out that standard.

Petitioner applied for asylum following the enactment of the REAL ID Act in 2005, so he must establish that his "'race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for persecuting [him].'" *Dallakoti v. Holder*, 619 F.3d 1264, 1268 (10th Cir. 2010) (quoting 8 U.S.C. § 1158(b)(1)(B)(i)). "[T]he BIA [has] interpreted 'one central reason' to mean 'the protected ground cannot play a minor role in the alien's past mistreatment or fears of future mistreatment. That is, it cannot be incidental, tangential, superficial, or subordinate to another reason for harm.'" *Id.* (quoting *In re J-B-N- & S-M-*, 24 I. & N. Dec. 208, 214 (BIA 2007)).

"Persecution . . . means not only persecution by the government but also by a non-governmental group that the government is unwilling or unable to control." *Id.* (internal quotation marks omitted). "In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether

---

[1]     "Restriction on removal was referred to as 'withholding of removal' before amendments to the [Immigration and Nationality Act] made by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA) . . . ." *Wiransane v. Ashcroft*, 366 F.3d 889, 892 n.1 (10th Cir. 2004).

those circumstances qualify as persecution." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (internal quotation marks omitted). "Agency findings of fact are reviewed under the substantial evidence standard." *Ritonga v. Holder*, 633 F.3d 971, 974 (10th Cir. 2011). Under this standard, "our duty is to guarantee that factual determinations are supported by reasonable, substantial and probative evidence considering the record as a whole." *Uanreroro*, 443 F.3d at 1204 (brackets and internal quotation marks omitted). But the agency's "'findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013) (quoting 8 U.S.C. § 1252(b)(4)(B)).

"What constitutes a particular social group is a pure question of law that we review de novo." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1191 (10th Cir. 2005). A particular social group is one whose members "share a common, immutable characteristic," and which meets "the additional requirements of particularity and social visibility." *Rivera-Barrientos*, 666 F.3d at 648 (internal quotation marks omitted).

Because Petitioner appears in this court pro se, we construe his pleadings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). "[O]ur review is confined to the reasoning given by the [agency], and we will not independently search the record for alternative bases to affirm." *Elzour*, 378 F.3d

- 8 -

at 1150.  But we "may consult the IJ's opinion to the extent that the BIA relied upon or incorporated it."  *Sarr v. Gonzales*, 474 F.3d 783, 790 (10th Cir. 2007).

Petitioner's arguments on appeal are conclusory, but we have carefully reviewed the administrative record in this case.  The BIA "agree[d] with the Immigration Judge's conclusion that [Petitioner] has not demonstrated a nexus between the harm suffered and feared and a protected ground . . . ."  Admin. R. at 4. The BIA did not further address Petitioner's argument that he qualified for asylum and restriction on removal as a member of a particular social group, so we have reviewed the IJ's explanation for rejecting that argument.  We conclude that El Salvadorans who are returning to El Salvador from the United States and perceived to be wealthy do not constitute a particular social group on this record. *See Rivera-Barrientos*, 666 F.3d at 648 (noting that the term is given "concrete meaning through a process of case-by-case adjudication" (internal quotation marks omitted)).  The IJ correctly found that Petitioner had not submitted any evidence to show that society in El Salvador considered wealthy people to be a distinct group. The State Department's 2007 special report on gangs in El Salvador does not support Petitioner's position that a distinct segment of the population of El Salvador is targeted by gangs due to its wealth.  *See, e.g.*, Admin. R. at 213-14 (BUREAU OF DEMOCRACY, HUMAN RIGHTS AND LABOR, U.S. DEP'T OF STATE, ISSUE PAPER: YOUTH GANG ORGS. IN EL SALVADOR 26-27 (2007) (discussing gang targets of women, former gang members, clergy members who help former gang members, and

police officers, and stating that "[u]nless an individual person has a specific reason to fear gangs, that person would be no more subject to possible violence from gang members than any other person in the country")). The group proposed by Petitioner therefore fails the test for social visibility. *See Rivera-Barrientos*, 666 F.3d at 650-51. Moreover, Petitioner admitted that he left El Salvador because "[t]here is a lot of criminality," Admin. R. at 143, and that he did not wish to go back because "the criminality has increased," *id.* at 146. As the IJ indicated, we have held that "acts of common criminality . . . do not implicate asylum eligibility." *Vatulev*, 354 F.3d at 1209. Because Petitioner failed to demonstrate his eligibility for asylum, he necessarily failed to meet the higher standard for restriction on removal. *See Uanreroro*, 443 F.3d at 1202.

The petition for review is denied.

Entered for the Court

Wade Brorby
Senior Circuit Judge